GATLIN & GIBSON *v.* WILCOX.

26   309
75   507

CONTRACT—Contracts, ordinarily, can only be rescinded by mutual consent of the parties and cannot, in general, be rescinded in *toto by one.*

RECISION—The infringement or partial failure of performance by one party to a contract, for which there may be a compensation in damages, does not authorize a recision or put an end to a contract.

NEW TRIALS.—While this court will not revise the decision of the circuit court, refusing a new trial, where the only ground presented is mere weight of evidence—yet a verdict should be set aside where it is clearly against the weight of evidence, so that at first blush it would shock our sense of justice.

Gatlin & Gibson *v.* Wilcox.          [DECEMBER

*Appeal from Crawford Circuit Court.*

HON. E. D. HAM, Circuit Judge.

*Jesse Turner*, for appellants.

Contracts can only be rescinded by the mutual consent of the parties; and a contract cannot, in general, be rescinded *in toto*, by one of the parties, when both of them cannot be placed in the identical situation which they occupied, and cannot stand upon the same terms as those which existed when the contract was made. It is also a clearly recognized principle, that if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to. See *Chitty on Cont. 4 Am. Ed. 573-4; 2 Parsons on Cont. 3 Ed. 191-2 and note nn.; 5 East. 449; Ad. & Ell. 599; 4 Mass. 502; 15 Mass. 319; 2 Watts, 433; 5 Ohio, 386; 17 Ark. 603; 20 Ark. 424.*

*Garland & Nash*, for appellee.

1. In this case, as Gatlin and Gibson did not comply with their contract, it was optionary with England, for whom appellee was security, to treat the contract as at an end, and having done so, they cannot complain. *Bellows v. Cheek, 20 Ark. 424,* and cases cited.

2. This is especially true for the benefit of Wilcox, who was only surety. England could not make a new contract to bind Wilcox without his consent; so that if Mrs. Turner's testimony be all true, and still more definite, it could not affect Wilcox's right here. *2 Vesey, 540; 6 Ark. 317; 15 Gray, (Mass.) 173; 7 Hill (N. Y.) 116.*

3. But as this case is presented here purely upon the weight of testimony, and as the verdict is not without testimony to support it, this court will not award a new trial. *25 Ark. 49; Rose' Digest, p. 559, section 45.*

BENNETT, J.

The appellants leased their ferry privilege, from the south. bank of the Arkansas river, opposite Van Buren, to William F. England and appellee, for the period of four years, commencing on the first day of May, 1868, at the rate of five hundred dollars per year, payments to be made quarterly. Default having been made in the payment of the first year's rent, a suit was instituted before a justice of the peace, to recover a balance of three hundred dollars due the appellants. Judgment was obtained in favor of appellee. Appellants appealed to the circuit court. In the circuit court the case was tried by a jury, and appellee again had judgment. Appellants moved for a new trial:

*First.* Because the verdict is contrary to evidence.

*Second.* Because the verdict is contrary to law.

Motion overruled; bill of exceptions setting out the evidence filed, and appeal taken to this court.

This case is presented here purely upon the weight of evidence, and it being a case originating in a justice of the peace's court, where no formal pleadings were requisite, we can only arrive at the issues by a careful review of the evidence adduced upon the trial. The appellants, to sustain the issue on their part, introduced and read in evidence to the jury their account, as follows:

"William F. England and Granville Wilcox,

To Richard C. Gatlin and Robert L. Gibson,          Dr.

1868 and 1869.     To rent of ferry, from the first day of May, 1868 to the first day of May, 1869, at the rate of $500 00, to be paid in quarterly installments, as per contract herewith filed, marked "A."                                                    $500 00

            Cr.

By cash paid of March, 1869     -     -     -     -     $200 00

            Balance due,     -     -     -     $300 00

And also, the accompanying contract between the plaintiffs and William F. England and the appellee:

"This agreement, made the fourth day of April, one thousand eight hundred and sixty-eight, between R. C. Gatlin and R. S. Gibson, of the county of Sebastian and State of Arkansas, of the first part, and William F. England, as principal, and Granville Wilcox, as security, of the county of Crawford, State of Arkansas, of the second part, witnesseth that the said party of the first part hath letten, and by these presents, doth grant, devise and let unto the said party of the second part, all the privileges in the ferry, known as the Gibson ferry, for the term of four years from the first day of May, 1868, at the yearly rent of five hundred dollars, to be paid in equal quarter-yearly payments, and the said party of the second part doth covenant to pay to the said party of the first part, the said yearly rent, as herein specified, namely: in quarterly payments on the first day of August, November, February and May, in each and every year; and at the end of said term, the said party of the second part will quit and surrender the premises."

Said contract was signed, sealed and delivered.

Jesse Turner also stated, in behalf of the appellants, that sometime during the winter of 1869, the said contract was placed in his hands by the appellants for collection; that he instituted suit upon it before justice Lytle, and during the pendency of that suit, William F. England came into his office and told him, although he thought the appellants had done wrong in renting or leasing to Mr. C. G. Scott, the right of way for passengers, crossing at Scott's ferry, up the river bank on the south side of the river to the Fort Smith road, yet, he had concluded to carry out the contract in good faith; that he was going up the Ohio to have a steam ferry-boat built, and would, when said boat was completed, return to Van Buren, and establish a ferry at that place, and said he would pay $200 00, on said contract, and the remaining $300 00, the balance of one year's rent, within ninety days from that date. In a few days Mr. Tott England, son of Mr. W. F. England,

accompanied by Robert S. Gibson, one of the appellants, in the presence of the witness, paid over to said Gibson said sum of $200 00; that William F. England left for the Ohio in a few days, and has never returned.

The appellee, to sustain the issue on his side, introduced, as a witness, Richard C. Gatling, one of the plaintiffs, who stated that sometime in the month of June, after the contract, he rented or leased the right of way to one Charles G. Scott, so that passengers and travellers could more conveniently get to Scott's ferry-boats, which were running near, or within the vicinity of the ferry privilege leased to appellee. It was also shown that Gatlin, one of the appellants, set their fence back from the river, so as to make a convenient road to and from Scott's ferry, and that he allowed Scott to make a landing on his (Gatlin's) land. This was all the evidence introduced.

It appears from the evidence that a recovery, in the court below, was resisted on the ground that the appellee, for himself and England, had a right to rescind and repudiate the contract, and thereby avoid its binding force, after appellants had leased the right of way to Scott. It is shown by the evidence that, although England complained because of the appellants having leased this right of way to Scott, he nevertheless, subsequently affirmed and recognized the binding force of the contract and determined to carry it out to the letter, and as an earnest of this, paid two hundred dollars on the rent and promised to pay the balance.

We think the lease of the right of way to Scott, was no infringement of the ferry privilege previously granted to England and appellee. In the words of the contract, it was simply the right to keep and maintain a ferry from appellants' land, across the river, to the opposite shore. Even, upon the assumption that the lease of the right of way to Scott, over appellants' land, was an infringement of the ferry privilege previously granted to England and appellee, it does not follow that England, or the appellee, or both would have a right to rescind the contract and thereby defeat the action. Ordinarily, contracts

can only be rescinded by the mutual consent of parties, and a contract cannot, in general, be rescinded in *toto* by one. It is also a clearly recognized principle, that if there is only a partial failure of performance by one party to the contract, for which there may be compensation in damages, the contract is not put an end to. See, *Chitty on Contracts, 4 Am. Ed. 573–4; 2 Par. on Cont. 3 Ed. 191–2, and note nn , 5 East 449; 4 Mass. 502; 15 Mass. 319; 5 Ohio, 387; 17 Ark. 603; 20 Ark. 434.*

The application of these principles dispels even the shadow of a pretext for a rescission of the contract. Nor can it be said that the appellee did plead recoupment. As was said in the case of *Desha v. Robinson, 17 Ark. 245,* "The general principle under which recoupment is allowed, is where one brings an action for a breach of contract between him and the defendant, and the latter can show that some stipulation in the same contract was made by the plaintiff, which he has violated, then the defendant may, if 'he choose, instead of bringing a cross-action, recoup his damages arising from the breach committed by the plaintiff, whether the damages be liquidated or not." In the case at bar the evidence does not show that appellee suffered any damage at all, from the leasing the right of way to Scott by Gatlin, nor is it shown, in any manner, that appellee or England ever made any complaint in regard to said lease to appellants; nor is it shown that appellee or England ever offered to give up their lease, or in any manner tried to have their contract annulled until after it was sought to be enforced.

We are aware, that this court has repeatedly held, that it will not revise the decision of the circuit court, refusing a new trial, where the only ground presented is mere weight of evidence, unless there is a total want of evidence upon some point absolutely necessary to a recovery, or unless the verdict is clearly and palpably contrary to the weight of evidence. When there is a conflict of evidence, the jury being the exclusive judges of the facts, their verdict will not be disturbed; *Sparks v. Beaver, 11 Ark. 630; State Bank v. McGuire, 14 Ark.*

*530; Brooks v. Perry, 23 Ark. 32.* Yet, at the same time, while we would not deviate from the rule thus established, we believe it to be our duty to say, a verdict should be set aside, when it is clearly against the weight of evidence, so that at first blush it would shock our sense of justice and right. It was so held in *Howell v. Webb, 2 Ark. 360; Vandever v. Wilson, 5 Ark. 407; Hagan v. Henry, 6 Ark. 86; Lewis v Reed, ib 428, Drennan v. Brown, 10 Ark. 138; Calvert v. Stone, 10 Ark. 491; State Bank v. Wooddy, ib. 638.*

From a review of the evidence, as presented, we are unable to find any evidence upon the part of the appellee that could, in any manner, warrant the jury in finding a verdict in his favor. If we were able to do so, in a slight degree, we should hesitate in disturbing the verdict of the jury. But we think this a case which comes clearly within the rule "that the verdict at first blush, shocks our sense of justice and right." The judgment of the circuit court is reversed and cause remanded to be proceeded in according to law.