JOSEPH E. WILSON *et al.* V. GEORGE S. EMIG.

1. SPECIFIC PERFORMANCE — *Notice* — *Judgment*. A party entitled to specific performance against the original party to a contract may have judgment against the person claiming under him, with notice.

2. CONTRACT, *not Rescinded*. A party who enters into a contract for the sale of real estate described as the E.½ of the N.E.¼ of sec. 4–14–18, and a part of the E.½ of the S.E.¼ of sec. 4–14–18, for the sum of $3,300, and a deed is made out on the same day properly describing the land and placed in escrow, and afterward, at different times, accepts from the purchaser the sum of $3,159.50 on the purchase-price cannot avoid specific performance of such contract by returning to the purchaser by mail a certificate of deposit of a local bank of the amount paid by such purchaser.

3. EVIDENCE *Supports Judgment*. The evidence examined, and *held*, sufficient to support a judgment and decree for specific performance.

*Error from Ellis District Court.*

ACTION for the specific performance of a contract for the purchase of certain land. Judgment for plaintiff *Emig*, on June 13, 1887. The defendants *Wilson* and two others bring the case to this court. The facts appear in the opinion.

*Gleed & Gleed*, for plaintiffs in error; *Chas. A. Hiller*, for plaintiff in error Hill P. Wilson.

*Stambaugh, Hurd & Dewey*, and *C. F. Mead*, for defendant in error.

Opinion by GREEN, C.: This was an action brought by George S. Emig, in the district court of Ellis county, against Joseph E. Wilson and others, for the specific performance of a contract for the purchase of certain real estate in Ellis county, The facts, so far as they are material, are: Joseph E. Wilson became the owner of the land in controversy in 1869, by a patent from the government; the Union Pacific railway company had a right-of-way through said land and occupied said right-of-way at the time and before the land was patented to Wilson; in the year 1886, Wilson placed the land in the hands

of Love & Cummings, of Hays City, for sale. On the 15th day of May, 1886, the plaintiff below made the following written proposition to purchase said land:

"*Messrs. Love & Cummings*—GENTS: I will give for E.½, N.¼, sec. 4–14–18, and part of E.½, S.E.¼, sec. 4–14–18, thirty-three hundred ($3,300) dollars: provided the entire tract will contain one hundred acres, the same to be surveyed at the expense of seller. If the tract contains less than one hundred acres, then I will pay *pro rata* less; if it contains more than one hundred acres, then I will pay *pro rata* more. Thus, should the tract contain 98 acres I will pay therefor $3,234. If it contains 102 acres, I will pay $3,366, or in that same proportion; one hundred dollars to be paid by me in cash, and the balance of purchase-money as per above proposition when the title is given free from all mortgages or other incumbrances, taxes, etc. Seller to furnish abstract.

GEO. S. EMIG."

Which was accepted by Wilson, as appears from the following indorsements:

"Received on the above contract one hundred dollars, and I do hereby agree to deposit warranty deed with Messrs. Love & Cummings, awaiting the examination of title and paying off the mortgages and taxes, etc."

"HAYS CITY, KAS., 5–15, 1886.

"This is to certify that I hereby accept the written proposition submitted to me this day by Love & Cummings, from the person named in written proposition submitted for the purpose of purchasing the tract of land named, and according to specification in written proposition named above, and I hereby agree to survey the land named and specified in written submitted proposition. J. E. WILSON."

"Received of Geo. S. Emig check on Abilene bank, Abilene, Kansas, for one hundred dollars, part purchase-money on E.½, N.E.¼, and part of E.½, S.E.¼, section 4–14–18, Ellis county, Kansas; balance to be paid as per proposition in writing this day made.

"May 15, 1886. LOVE & CUMMINGS."

In pursuance of the acceptance of the proposition made by the plaintiff below, the following agreement was signed by Emig:

"Whereas, I became the purchaser of the following real

estate, to wit, N.E. ¼ of N.E. ¼, and S.E. ¼ of S.E. ¼, and that portion of N.E. ¼ of S.E. ¼ lying immediately north of Fort Hays military reservation, in section 4, township 14, range 18 west, containing one hundred and one and one-fourth acres according to actual survey made May 15, 1886, at and for the sum of $33 per acre: Now know all men by these presents, that I do hereby promise and agree to and with the said seller thereof, Joseph E. Wilson, that I will from time to time furnish the money to pay off and have released such mortgages and taxes as are a lien against said real estate, as shown by an abstract now in the hands of Love & Cummings, pertaining, among other lands, to the land above mentioned. The said Joseph E. Wilson to deposit a warranty deed with Love & Cummings, to be delivered to me when the transaction is fully completed according to the terms of a certain proposition in writing made by me, and in the hands of said Love & Cummings, on the 15th day of May, 1886; the whole transaction to be closed as promptly as can be done.

"I do further agree to assume the payment of all interest on said mortgages that shall accrue after the 1st day of June, 1886; the said Wilson to pay all interest now due and to become due up to the 1st day of June, 1886. It is, however, understood and agreed that all sums advanced for the payment of liens, mortgages, etc., as well as hand-money now paid, shall be deducted from the purchase-money on final settlement. The warranty deed to be clear of all incumbrances.

"Witness: R. H. LOVE.                    GEO. S. EMIG."

"I agree to pay the balance of the purchase-money, after deducting amount of mortgages and hand-money, on or before 1st day of June, 1886.                    GEO. S. EMIG.

"Witness: R. H. LOVE."

The land was surveyed by Wilson, and a deed executed and placed in the hands of Love & Cummings, to be delivered to Emig upon the payment of the entire amount of the purchase-money. Different sums of money were paid by the plaintiff below upon this land, until the 16th day of June, when the plaintiff below paid $200, making the aggregate payment upon the land of $3,159.50. Some question arose, after the purchase of this land, between Emig and Wilson, with reference to the right-of-way; Emig claiming that he should not be

compelled to pay for the right-of-way over this land; there was some doubt, too, as to whether the right-of-way was two hundred or four hundred feet wide, making a difference in the tract, if it was two hundred feet, of something like six acres, and if four hundred feet, about twelve acres. A correspondence was carried on between the agents of Wilson and Emig in regard to the right-of-way of the railroad, after the payment of the sum of $3,159.50, until the 29th day of July, when a letter was written by the agents of Wilson demanding a compliance with the contract and a settlement at once. On the 3d day of August, 1886, Joseph E. Wilson and his wife, in consideration of $3,339, deeded the land in controversy to Hill P. Wilson, his brother, who knew of the transaction between his brother and Emig; and on the 4th day of August, 1886, Wilson undertook to rescind this contract, claiming that Emig had failed to make the payments in accordance with the contract, and that time being of the essence of the contract, he had a perfect right to do so; and returned to Emig, at Abilene, Kansas, through a certificate of deposit from one of the banks in Hays City, the amount of the purchase-money which had been paid by Emig. Upon the receipt of this letter, Emig returned the certificate of deposit to Wilson, and tendered to him the amount which he claimed to be due, $181.75, being the amount of the purchase-price of this land as it was surveyed on the 15th of May, for one hundred one and one-fourth acres. This tender was declined, and Emig brought this action, bringing the residue of the purchase-money into court, and Wilson paying into court the amount that had previously been paid by Emig upon this contract.

There is no controversy with reference to the tender upon the part of Emig and Wilson; and no dispute as to the amount actually due. The material question in this case is, whether the plaintiff below, under all the circumstances, was entitled to a specific performance of his contract. We think the evidence in this case shows that the plaintiff in error, Hill P. Wilson, took the title to the land in controversy with knowl-

**1. Specific performance— notice—judgment.** edge of the existing equities between Emig and Joseph E. Wilson, and shall assume that specific performance will be decreed against him, if good against the original party, as he took the deed from his brother with notice. The rule is well settled that where a specific performance will be decreed between original parties, it will lie as to parties claiming under them with knowledge. (*Nelthorpe v. Holgate*, 1 Coll. 218; *Bishop v. Newton*, 20 Ill. 180; *Corbus v. Teed*, 69 id. 205; *Roberts v. Marchant*, 1 Phil. Ch. 398; *Ewins v. Gordon*, 49 N. H. 444; *Currier v. Howard*, 14 Gray, 511; *McMorris v. Crawford*, 15 Ala. 271.)

It is claimed upon the part of the plaintiffs in error that the description of the land in the contract between Emig and Wilson was too indefinite; that on account of its ambiguity it was no contract at all. We do not agree with counsel in this view of the case. No difficulty arose between the parties about the description of the land as an entirety. The only questions were as to the right-of-way through the land, and whether the plaintiff below was to pay for the land occupied by the railroad. By the terms of the contract the land was to be surveyed, and by this survey the description was to be determined; and it seems that it was, as a matter of fact, surveyed, and a deed made on the same day that the proposition for the sale of the land was accepted by Wilson. The rule is well established, that in actions of this kind, where the boundary to property contracted for can be defined, the parties will be bound, and a general description of the subject-matter of the sale is sufficient. (Fry, Spec. Perf., §§ 325, 328, 329; *Monro v. Taylor*, 8 Hare, 51; *Owen v. Thomas*, 3 Mylne & K. 353; *Haywood v. Cope*, 25 Beav. 140.) The evidence in this case shows that the deed was executed by Joseph E. Wilson and his wife, and delivered to his agents, Love & Cummings, on the same day that the proposition of Emig was accepted; and no question was raised but that the property was properly described in the deed. We think the contract was sufficiently definite and certain to be enforced.

9 — 44 KAS.

The next contention of counsel is, that the contract was rescinded by Wilson; and the only question for our further determination is whether Wilson had a right, under the state of facts disclosed, to make a rescission.   There seems to have been no intention upon the part of Joseph E. Wilson to rescind this contract, until about the 1st of August, 1886., The evidence shows that as late as July 29, through his agents, Love & Cummings, he insisted upon a full performance of the contract and demanded a settlement of the balance due on that contract.   Emig had already paid him $3,159.50, leaving, according to his own claim, $181.75 still due.   The deed was in the hands of his agents at Hays City, and on the 4th of August he sent a notice to Emig of his intention to rescind the contract.   He notified him that the contract was rescinded, and transmitted to him a certificate of deposit of the amount that Emig had paid him, which was promptly returned.   We

2. Contract, not rescinded. do not think that Wilson was in a position to rescind this contract in such a summary manner. The rule has been well stated by Mr. Justice Story, in the case of *Taylor v. Longworth*, 14 Pet. 173: .

"In the first place, there is no doubt that time may be of the essence of a contract for the sale of property.   It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property, or the avowed objects of the seller or the purchaser.   And even when time is not thus expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross *laches*, or has been inexcusably negligent in performing the contract on his part; or if there has, in the intermediate period, been a material change of circumstances, affecting the rights, interests, or obligations of the parties, in all such cases courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust.

"But except under circumstances of this sort, or of an analogous nature, time is not treated by courts of equity as of the essence of the contract; and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied

with the strict terms of the contract.    But in all such cases
the court expects the party to make out a case free from all
doubt; and to show that the relief which he asks is, under
all the circumstances, equitable; and to account in a reason-
able manner for his delay, and apparent omission of his duty."

Applying this rule to the facts in this case, we do not think
the plaintiff below was so grossly negligent as to deprive him
of the right of specific performance.    He had paid all he
claimed was due on the contract, and more too.    He had, in
our judgment, a perfect right to adjust the question of the
amount of land he was to pay for.    While it is true he was
to pay for the land by the 1st day of June, the evidence shows
that Wilson accepted $200 on this contract sixteen days after
the time had expired.    If time had been of the essence of the
contract, there was certainly a waiver upon the part of Wilson,
by the acceptance of this payment; and the demand that Wil-
son made upon Emig for a settlement, long after the expira-
tion of the time when the contract was to have been performed.
(Fry, Spec. Perf., § 1091.)

As a general rule, time will not run as *laches*, pending ne-
gotiations between the parties, even though they may be car-
ried on without prejudice to a notice given by one party. (Fry,
Spec. Perf., § 1083; *Gee v. Pease*, 2 De Gex & S. 325; *South-
comb v. Bishop of Exeter*, 6 Hare, 219.)

A rescission of a contract necessarily implies that the par-
ties shall be restored to the condition in which they were be-
fore the contract was made.    This was not done by Wilson.
Simply transmitting a certificate of deposit upon a local bank
to Emig for the amount he had paid upon the contract, was
not sufficient.    The principle is clearly recognized that con-
tracts can only be rescinded by the mutual consent of parties,
and a contract cannot, in general, be rescinded *in toto* by one.
(*Gatlin v. Wilcox*, 26 Ark. 309; Chitty on Contracts, 4 Am.
ed., 573.)

In our opinion, the plaintiff below was not guilty of un-
reasonable and inexcusable delay in the performance of his
part of the contract, and was entitled to a deed for the land

3. Evidence
supports
judgment.

in question when he tendered Joseph E. Wilson the amount which he admitted to be due, on the 6th of August, 1886. We think the judgment of the court below was in accordance with the evidence, and recommend that it be affirmed.

By the Court: It is so ordered.

All the Justices concurring.