No. 48,327

DALE A. LUTHI and MARCIA LUTHI, *Appellees,* v. JOHN R. EVANS, and J. R. BURRIS, *Appellees,* and INTERNATIONAL TOURS, INC., a corporation, *Appellant.*

(576 P.2d 1064)

Opinion filed April 1, 1978.

*Stanley E. Toland,* of Toland and Thompson, of Iola, argued the cause, and *Clyde W. Toland,* of the same firm, was with him on the brief for the appellant.

*Harold G. Forbes,* of Forbes and Pohl, of Eureka, argued the cause, and *Dale L. Pohl,* and *Patrick T. Forbes,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is a review of the judgment of the Court of Appeals entered in *Luthi v. Evans,* 1 Kan. App. 2d 114, 562 P.2d 127. The factual circumstances and issues of law presented are discussed in depth in the majority opinion of Judge Spencer and in the dissenting opinion of Judge Abbott. We will set forth here only those facts necessary for the determination of the issue appealed to this court.

On February 1, 1971, Grace V. Owens was the owner of interests in a number of oil and gas leases located in Coffey county. On that date Owens, by a written instrument designated "Assignment of Interest in Oil and Gas Leases," assigned to

defendant International Tours, Inc. (hereinafter Tours) all of such oil and gas interests. This assignment provided as follows:

"ASSIGNMENT OF INTEREST IN OIL AND GAS LEASES

"KNOW ALL MEN BY THESE PRESENTS:

"That the undersigned Grace Vannocker Owens, formerly Grace Vannocker, Connie Sue Vannocker, formerly Connie Sue Wilson, Larry R. Vannocker, sometimes known as Larry Vannocker, individually and also doing business as Glacier Petroleum Company and Vannocker Oil Company, hereinafter called Assignors, for and in consideration of $100.00 and other valuable consideration, the receipt whereof is hereby acknowledged, do hereby sell, assign, transfer and set over unto International Tours, Inc., a Delaware Corporation, hereinafter called Assignee, all their right, title, and interest (which includes all overriding royalty interest and working interest) in and to the following Oil and Gas Leases located in Coffey County, Kansas, more particularly specified as follows, to-wit:

"(Lease descriptions and recording data on 7 oil and gas leases not involved in this appeal are stated here.)

together with the rights incident thereto and the personal property thereon, appurtenant thereto or used or obtained in connection therewith.

"And for the same consideration the Assignors covenant with the Assignee, his heirs, successors or assigns: That the Assignors are the lawful owners of and have good title to the interest above assigned in and to said Lease, estate, rights and property, free and clear from all liens, encumbrances or adverse claims; That said Lease is valid and subsisting Lease on the land above described, and all rentals and royalties due thereunder have been paid and all conditions necessary to keep the same in full force have been duly performed, and that the Assignor will warrant and forever defend the same against all persons whomsoever, lawfully claiming or to claim the same. *Assignors intend to convey, and by this instrument convey, to the Assignee all interest of whatsoever nature in all working interests and overriding royalty interest in all Oil and Gas Leases in Coffey County, Kansas, owned by them whether or not the same are specifically enumerated above with all oil field and oil and gas lease equipment owned by them in said County whether or not located on the leases above described,* or elsewhere in storage in said County, but title is warranted only to the specific interests above specified, and assignors retain their title to all minerals in place and the corresponding royalty (commonly referred to as land owners royalty) attributable thereto.

"The effective date of this Assignment is February 1, 1971, at 7:00 o'clock a.m.

"/s/ Grace Vannocker Owens
" Grace Vannocker Owens
" Connie Sue Vannocker
" Larry R. Vannocker

"(Acknowledgment by Grace Vannocker Owens before notary public with seal impressed thereon dated Feb. 5, 1971, appears here.)" (Emphasis supplied.)

This assignment was filed for record in the office of the register of deeds of Coffey county on February 16, 1971.

It is important to note that in the first paragraph of the assignment, seven oil and gas leases were specifically described. Those

leases are not involved on this appeal. In addition to the seven leases specifically described in the first paragraph, Owens was also the owner of a working interest in an oil and gas lease known as the Kufahl lease which was located on land in Coffey county. The Kufahl lease was not one of the leases specifically described in the assignment.

The second paragraph of the assignment states that the assignors intended to convey, and by this instrument conveyed to the assignee, "all interest of whatsoever nature in all working interests and overriding royalty interest in all Oil and Gas Leases in Coffey County, Kansas, owned by them whether or not the same are specifically enumerated above . . ." The interest of Grace V. Owens in the Kufahl lease, being located in Coffey county, would be included under this general description.

On January 30, 1975, the same Grace V. Owens executed and delivered a second assignment of her working interest in the Kufahl lease to the defendant, J.R. Burris. Prior to the date of that assignment, Burris personally checked the records in the office of the register of deeds and, following the date of the assignment to him, Burris secured an abstract and title to the real estate in question. Neither his personal inspection nor the abstract of title reflected the prior assignment to Tours.

The controversy on this appeal is between Tours and Burris over ownership of what had previously been Owens's interest in the Kufahl lease. It is the position of Tours that the assignment dated February 1, 1971, effectively conveyed from Owens to Tours, Owens's working interest in the Kufahl lease by virtue of the general description contained in paragraph two of that assignment. Tours then contends that the recording of that assignment in the office of the register of deeds of Coffey county gave constructive notice of such conveyance to subsequent purchasers, including Burris. Hence, Tours reasons, it is the owner of Owens's working interest in the Kufahl lease.

Burris admits that the general description and language used in the second paragraph of Owens's assignment to Tours was sufficient to effect a valid transfer of the Owens interest in the Kufahl lease to Tours *as between the parties to that instrument.* Burris contends, however, that the general language contained in the second paragraph of the assignment to Tours, as recorded, which failed to state with specificity the names of the lessor and lessee,

the date of the lease, any legal description, and the recording data, was not sufficient to give constructive notice to a subsequent innocent purchaser for value without actual notice of the prior assignment. Burris argues that as a result of those omissions in the assignment to Tours, it was impossible for the register of deeds of Coffey county to identify the real estate involved and to make the proper entries in the numerical index. Accordingly, even though he checked the records at the courthouse, Burris was unaware of the assignment of the Kufahl lease to Tours and he did not learn of the prior conveyance until after he had purchased the rights from Grace V. Owens. The abstract of title also failed to reflect the prior assignment to Tours. Burris maintains that as a result of the omissions and the inadequate description of the interest in real estate to be assigned under the second paragraph of the assignment to Tours, the Tours assignment, as recorded, was not sufficient to give constructive notice to a subsequent innocent purchaser for value. It is upon this point that Burris prevailed before the district court. On appeal, the Court of Appeals held the general description contained in the assignment to Tours to be sufficient, when recorded, to give constructive notice to a subsequent purchaser for value, including Burris.

At the outset, it should be noted that a deed or other instrument in writing which is intended to convey an interest in real estate and which describes the property to be conveyed as "all of the grantor's property in a certain county," is commonly referred to as a "Mother Hubbard" instrument. The language used in the second paragraph of the assignment from Owens to Tours in which the assignor conveyed to the assignee "all interest of whatsoever nature in all working interests . . . in all Oil and Gas Leases in Coffey County, Kansas," is an example of a "Mother Hubbard" clause. The so-called "Mother Hubbard" clauses or descriptions are seldom used in this state, but in the past have been found to be convenient for death bed transfers and in situations where time is of the essence and specific information concerning the legal description of property to be conveyed is not available. Instruments of conveyance containing a description of the real estate conveyed in the form of a "Mother Hubbard" clause have been upheld in Kansas for many years as between the parties to the instrument. (*In re Estate of Crawford,* 176 Kan. 537, 271 P.2d 240; *Bryant v. Fordyce,* 147 Kan. 586, 78 P.2d 32.)

The parties in this case agree, and the Court of Appeals held, that the second paragraph of the assignment from Owens to Tours, providing that the assignors convey to the assignee all interests in all oil and gas leases in Coffey County, Kansas, owned by them, constituted a valid transfer of the Owens interest in the Kufahl lease to Tours *as between the parties to that instrument.* We agree. We also agree with the parties and the Court of Appeals that a single instrument, properly executed, acknowledged, and delivered, may convey separate tracts by specific description and by general description capable of being made specific, where the clear intent of the language used is to do so. We agree that a subsequent purchaser, who has *actual* notice or knowledge of such an instrument, is bound thereby and takes subject to the rights of the assignee or grantor.

This case involves a legal question which is one of first impression in this court. As noted above, the issue presented is whether or not the recording of an instrument of conveyance which uses a "Mother Hubbard" clause to describe the property conveyed, constitutes *constructive notice to a subsequent purchaser.* The determination of this issue requires us to examine the pertinent Kansas statutes covering the conveyance of interests in land and the statutory provisions for recording the same. Statutes pertaining to conveyances are contained in K.S.A. 58-2201 through K.S.A. 58-2269. We will mention only those sections which we deem to be pertinent on this appeal. K.S.A. 58-2203 provides in part as follows:

"58-2203. **Form of warranty deed.** Any conveyance of lands, worded in substance as follows: A. B. conveys and warrants to C.D. (*here describe the premises*), for the sum of (here insert the consideration), the said conveyance being dated, duly signed and acknowledged by the grantor, shall be deemed and held a conveyance in fee simple to the grantee, . . ." (Emphasis supplied.)

K.S.A. 58-2204 sets forth a similar statutory form for a quitclaim deed. Under these sections an instrument, to constitute a deed, must "describe the premises." The degree of specificity of the description of the premises required is not indicated.

The manner of execution and acknowledgment of instruments of conveyance is covered by K.S.A. 58-2205, 58-2209, 58-2211, and 58-2212. K.S.A. 58-2213 through 58-2217 provide for the certification of acknowledgments and the procedure for proving an unacknowledged deed. No issues have been raised in this case

as to the execution, acknowledgment, or certification of the Owens assignment to Tours and it is not necessary to set forth these statutes in detail.

The recordation of instruments of conveyance and the effect of recordation is covered in part by K.S.A. 58-2221, 58-2222, and 58-2223. These statutes are directly involved in this case and are as follows:

"58-2221. **Recordation of instruments conveying or affecting real estate; duties of register of deeds.** Every instrument in writing that conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated: *Provided,* It shall be the duty of the register of deeds to file the same for record immediately, and in those counties where a numerical index is maintained in his or her office the register of deeds shall compare such instrument, before copying the same in the record, with the last record of transfer in his or her office of the property described and if the register of deeds finds such instrument contains apparent errors, he or she shall not record the same until he or she shall have notified the grantee where such notice is reasonably possible.

"The grantor, lessor, grantee or lessee or any other person conveying or receiving real property or other interest in real property upon recording the instrument in the office of register of deeds shall furnish the register of deeds the full name and last known post-office address of the person to whom the property is conveyed or his or her designee. The register of deeds shall forward such information to the county clerk of the county who shall make any necessary changes in address records for mailing tax statements."

"58-2222. **Same; filing imparts notice.** Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

"58-2223. **Same; unrecorded instrument valid only between parties having actual notice.** No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

It is the position of Tours that the statutes contained in Chapter 58, Article 22, of K.S.A. are the only statutes which are material for a determination of this case and that statutory provisions in other chapters need not be examined. Simply stated, it is the position of Tours that the assignment from Owens to Tours was properly executed and acknowledged as required by the statutes and constituted a valid transfer of the Owens interest in the Kufahl lease to Tours. This instrument, when filed for record in

full compliance with the provisions of K.S.A. 58-2221, imparted constructive notice to all subsequent purchasers, including Burris, who are deemed to purchase with notice under K.S.A. 58-2222. This was the position taken by the Court of Appeals.

Burris maintains that our examination must extend beyond the statutes set forth above. It is his position that we must also consider the Kansas statutes which govern the custody and the recordation of instruments of conveyance, and the duties of the register of deeds in regard thereto, as contained at K.S.A. 19-1201 through K.S.A. 19-1219. We will discuss only those statutes which we deem pertinent in the present controversy. K.S.A. 19-1204 makes it the duty of the register of deeds in each county to take custody of and preserve all of the records in his office and to record all instruments authorized by law to be recorded. K.S.A. 19-1205 requires the register of deeds to keep a general index, direct and inverted, in his office. The register is required to record in the general index under the appropriate heading the names of grantors and grantees, the nature of the instrument, the volume and page where recorded, and, where appropriate, *a description of the tract.*

K.S.A. 19-1207 requires the register to keep a book of plats with an index thereof. K.S.A. 19-1209 provides that the county commissioners of any county may order the register of deeds to furnish a numerical index containing "the name of the instrument, the name of the grantor, the name of the grantee, *a brief description of the property* and the volume and page in which each instrument indexed is recorded." K.S.A. 19-1210 makes it the duty of the register to make correct entries in the numerical index, of all instruments recorded concerning real estate, under the appropriate headings, and *"in the subdivision devoted to the particular quarter section described in the instrument making the conveyance."*

At this point we should refer back to K.S.A. 58-2221 which is set forth above. That statute makes it the duty of the register of deeds in those counties where a numerical index is maintained to compare any instrument offered for recordation, before copying the same in the record, with the last record of transfer in his office of *the property described;* if the register of deeds finds that such instrument contains apparent errors, he shall not record the same until he shall have notified the grantee where such notice is

reasonably possible. The second paragraph of K.S.A. 58-2221 requires either the grantor or grantee, upon recording the instrument in the office of the register of deeds, to furnish the register of deeds the full name and last known post-office address of the person to whom the property is conveyed. The register of deeds is required to forward the necessary information to the county clerk who shall make any necessary changes in address records for mailing tax statements. These two provisions in K.S.A. 58-2221 show a legislative intent that instruments of conveyance should describe the land conveyed with sufficient specificity to enable the register of deeds to determine the correctness of the description from the numerical index and also to make it possible to make any necessary changes in address records for mailing tax statements.

We have concluded that the statutes contained in K.S.A. Chapter 58 pertaining to conveyances of land and the statutes contained in Chapter 19 pertaining to recordation of instruments of conveyance constitute an overall legislative scheme or plan and should be construed together as statutes *in pari materia. (City of Overland Park v. Nikias,* 209 Kan. 643, 498 P.2d 56.) It also seems obvious to us that the purpose of the statutes authorizing the recording of instruments of conveyance is to impart to a subsequent purchaser notice of instruments which affect the title to a *specific tract of land* in which the subsequent purchaser is interested at the time. From a reading of all of the statutory provisions together, we have concluded that the legislature intended that recorded instruments of conveyance, to impart constructive notice to a subsequent purchaser or mortgagee, should describe the land conveyed with sufficient specificity so that the specific land conveyed can be identified. As noted above, K.S.A. 58-2203 and 58-2204 require a deed to *describe the premises.* A description of the property conveyed should be considered sufficient if it identifies the property or affords the means of identification within the instrument itself or by specific reference to other instruments recorded in the office of the register of deeds. Such a specific description of the property conveyed is required in order to impart constructive notice to a subsequent purchaser.

Again, we wish to emphasize that an instrument which contains a "Mother Hubbard" clause, describing the property conveyed in the general language involved here, is valid, enforce-

able, and effectively transfers the entire property interest as between the parties to the instrument. Such a transfer is not effective as to subsequent purchasers and mortgagees unless they have *actual* knowledge of the transfer. If, because of emergency, it becomes necessary to use a "Mother Hubbard" clause in an instrument of conveyance, the grantee may take steps to protect his title against subsequent purchasers. He may take possession of the property. Also, as soon as a specific description can be obtained, the grantee may identify the specific property covered by the conveyance by filing an affidavit or other appropriate instrument or document with the register of deeds.

We also wish to make it clear that in situations where an instrument of conveyance containing a sufficient description of the property conveyed is duly recorded but not properly indexed, the fact that it was not properly indexed by the register of deeds will not prevent constructive notice under the provisions of K.S.A. 58-2222. (See *Gas Co. v. Harris,* 79 Kan. 167, 100 Pac. 72.)

From what we have said above, it follows that the recording of the assignment from Owens to Tours, which did not describe with sufficient specificity the property covered by the convey-ance, was not sufficient to impart constructive notice to a sub-sequent purchaser such as J.R. Burris in the present case. Since Burris had no *actual* knowledge of the prior assignment from Owens to Tours, the later assignment to Burris prevails over the assignment from Owens to Tours.

The judgment of the Court of Appeals is reversed and the judgment of the district court is affirmed.