(775 P.2d 198)
No. 62,887

ERMIL R. MILLER, *Appellant*, v. MARY E. ALEXANDER, *et al.*,
Appellees.

Petition for review denied September 29, 1989.

Opinion filed June 2, 1989.

David K. *Fromme*, of Shawnee, for the appellant.

*Mark V. Bodine* and *Rudolf H. Beese*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellees Barlows.

Before DAVIS, P.J., LEWIS, J., and TERRY L. BULLOCK, District Judge, assigned.

DAVIS, J.: The plaintiff Ermil R. Miller brought this action for specific performance against the defendants, Mary E. Alexander, Warren E. Barlow, Coletha M. Barlow, Warren E. Barlow II, and Lynne K. Barlow, based upon an option to purchase five acres of land for $2,500 in Johnson County, Kansas. The trial court awarded damages against Mary E. Alexander for breach of contract but refused specific performance against the Barlows based upon its holding that the Barlows were bona fide purchasers for value without knowledge of plaintiff's real estate option. We reverse and remand with instructions to grant specific performance based upon our conclusion that the Barlows were not bona fide purchasers.

On April 8, 1970, Mac P. Alexander, who is now deceased, and Mary E. Alexander, his wife, executed a contract for deed conveying all but five acres of an approximately 80-acre tract near Olathe to Richard L. Bond and Suzanne S. Bond, William W. Chiles and Carol L. Chiles, and James R. Lippert and Connie M. Lippert for the sum of $37,500. The 75 acres they conveyed was apparently undeveloped land. The five acres they retained contained their residence and several small buildings. The 75 acres were described as follows:

"The East Half (E ½) of the Northwest Quarter (NW ¼) of Section 24, Township 13, Range 22, excepting 5 acres in the Northeast Corner of said Northwest

Quarter, described as: Commencing at the Northeast Corner of the above described real estate, thence West 330', thence South 660', thence East 330', thence North 660' to point of beginning, subject to easements, restrictions, zoning and rights of way of record, if any."

The contract for deed gave the buyers an option to purchase the five acres for $2,500. Specifically, it provided:

"Seller gives the buyer the option to purchase the five acres excepted above, more particularly described as:

Commencing at the Northeast Corner of the East Half (E ½) of the Northwest-Quarter (NW ¼) of Section 24, Township 13, Range 22, Johnson County, Kansas, thence West 330', thence South 660', thence East 330', thence North 660' to point of beginning, subject to easements, restrictions, zoning and rights of way of record, if any, containing five acres more or less,

with all improvements located thereon for the sum of Two Thousand Five Hundred ($2,500.00) on the following conditions, to wit:

"1. Buyer must exercise this option within thirty days after the date of the death of the survivor of Mac P. Alexander and Mary E. Alexander and shall pay said consideration of $2,500.00 to the estate of the surviving seller or the heirs that are legally entitled thereto, or said sum shall be escrowed until such time as an executor or administrator is appointed or the heirs are determined.

"2. In the event seller elects to sell the property prior to their death, the buyer has a first option to purchase the same for the sum of $2,500.00 and the seller shall give the buyer a thirty day notice in writing of his intention to sell and the buyer shall then exercise his option within that period of time.

"3. In the event the buyer does not exercise this option, the seller may sell the above described five acres to any party at any price."

This contract was recorded on June 29, 1970.

On July 16, 1970, William W. Chiles, one of the buyers, filed with the register of deeds the following affidavit:

"William W. Chiles, of lawful age, after being duly sworn states that he is one of the purchasers under a certain contract for deed wherein Mac P. Alexander and Mary E. Alexander were sellers, said contract for deed being recorded in Mortgage Book 757, page 421, the contract being dated April 8, 1970. Said contract for deed referred to the land being sold as being situated in Section 24, Township 13, Range 22, however, the section description was in error and should have been Section 34."

A correct legal description followed. Both the contract for deed and the affidavit were indexed under the proper description of the NW/4, Section 34, Township 13, Range 22.

On February 23, 1972, the six buyers assigned their entire right, title, and interest under the contract for deed to the plaintiff, Ermil R. Miller. Their written "Assignment of Contract for Deed" was recorded on March 6, 1972. On November 30, 1978, plaintiff paid off the balance owed on the contract for deed

and received a warranty deed from Mary Alexander for the tract, excepting the five acres.

On June 8, 1983, Mary E. Alexander executed a "contract for deed" conveying an interest in the five-acre tract to Warren, Coletha, Warren II, and Lynne Barlow (hereafter the Barlows) for $15,000. On June 20, 1983, the Barlows filed with the register of deeds an "Affidavit of Equitable Interest." No notice of Mary Alexander's intent to sell any interest in the five acres was given to any third party. Plaintiff learned of the Alexander-Barlow sale shortly before April 23, 1987, when he filed suit seeking specific performance or, in the alternative, money damages. Plaintiff did not request any money damages in addition to specific performance.

On January 26, 1988, the trial court granted partial summary judgment in favor of the Barlows. The court found that the Barlows did not have any actual notice of plaintiff's option and held that, because of the section number error in the contract for deed, the Barlows could not be charged with constructive notice of plaintiff's option. The court then held that the Barlows were bona fide purchasers and that, as such, they took free of plaintiff's claim. Accordingly, the court denied plaintiff's request for specific performance.

With respect to defendant Mary Alexander, the court held that the option in the contract for deed had not merged into the subsequent warranty deed, that the option was merely a "preemptive right" which did not require consideration, and that this right did not violate the rule against perpetuities since it was personal to the Alexanders and ran for the lifetime of the survivor of Mac P. and Mary E. Alexander. Accordingly, the court held that Mary Alexander had breached her contract with plaintiff and ordered a trial on the issue of damages. Following the trial on damages, the court entered judgment against Mary Alexander for $30,000.

On appeal plaintiff seeks specific performance or, alternatively, a higher amount in damages. Because we conclude that plaintiff is entitled to specific performance, and because plaintiff did not seek money damages in addition to specific performance, none can be awarded.

### Notice

K.S.A. 58-2222 provides:

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

It is undisputed that the Barlow defendants did not have actual notice of plaintiff's purchase option. The issue in this case is whether the contract for deed and the Chiles affidavit provided constructive notice of plaintiff's option. In deciding this issue, this court's standard of review is de novo. The question is primarily one of law and, to the extent factual matters are involved, this court is as able to decide these questions as was the trial court since the evidence consists entirely of written documents. *Stith v. Williams*, 227 Kan. 32, Syl. ¶ 2, 605 P.2d 86 (1980).

The circumstances under which a recorded instrument will be held to impart constructive notice were stated in *Luthi v. Evans*, 223 Kan. 622, 576 P.2d 1064 (1978):

"We have concluded that the statutes contained in K.S.A. Chapter 58 pertaining to conveyances of land and the statutes contained in Chapter 19 pertaining to recordation of instruments of conveyance constitute an overall legislative scheme or plan and should be construed together as statutes *in pari materia*. [Citation omitted.] It also seems obvious to us that the purpose of the statutes authorizing the recording of instruments of conveyance is to impart to a subsequent purchaser notice of instruments which affect the title to a *specific tract of land* in which the subsequent purchaser is interested at the time. From a reading of all of the statutory provisions together, we have concluded that the legislature intended that recorded instruments of conveyance, to impart constructive notice to a subsequent purchaser or mortgagee, should describe the land conveyed with sufficient specificity so that the specific land conveyed can be identified. As noted above, K.S.A. 58-2203 and 58-2204 require a deed to *describe the premises*. A description of the property conveyed should be considered sufficient if it identifies the property or affords the means of identification within the instrument itself or by specific reference to other instruments recorded in the office of the register of deeds. Such a specific description of the property conveyed is required in order to impart constructive notice to a subsequent purchaser." 223 Kan. at 629.

This court applied the *Luthi* standard in *Hildebrandt v. Hildebrandt*, 9 Kan. App. 2d 614, 683 P.2d 1288 (1984). The land in question was a 5.64-acre tract known as "Hildebrandt Island." The defendant was the grantor's oldest son. The plaintiffs were

the grantor's other six children and their spouses. The grantor conveyed the island to the plaintiffs. The legal description used the wrong section number in the general description describing the quarter section in which the island was located, but used the correct section number later in the same description in the metes and bounds description of the island's exact location. The plaintiff-grantees subsequently discovered the error and filed a corrected deed; however, before they did this, the grantor granted a 50-year lease on the island to defendant, his oldest son. 9 Kan. App. 2d at 615.

After quoting the *Luthi* standard, this court held that the original deed contained a sufficient description to impart constructive notice. It stated:

"The error in the deed complained of by the defendant was a reference in the beginning of the description to 'Section 24.' This is followed, however, by a metes and bounds description commencing at "the Southwest corner of Section 34' which clearly places the 5.64 acres in question in Section 34, the proper section. This description, together with the name 'Hildebrandt Island,' affords a reasonably certain and sufficient means of identification within the deed itself for identifying the property conveyed. The fact that it may not have been properly indexed by the register of deeds will not prevent constructive notice under K.S.A. 58-2222." 9 Kan. App. 2d at 617.

After considering these two cases, the trial court held:

"Despite the court's holding in *Hildebrandt*, the factual situation differs from the present case. First, the error in *Hildebrandt* was in the final deed to the actual property in question rather than in a contract for deed for a separate parcel of property. This, of course, made the error obvious and more reasonable to identify than in the present case. Second, the degree of specificity to which the Court said other instruments should be referred to has not been met in the present case. The Chiles reformation affidavit could be read and understood by a reasonable and prudent person as correcting the legal description *as to the 75-acre tract of land only*. Even if it were logical to refer back to the original Contract for Deed (which is the only document that mentions an 'option'), the option clause in that document is in reference to a 5-acre tract in Section 24. The section number in which the option clause is in reference to is simply not clear and could certainly be misleading to subsequent purchasers without further knowledge of the facts. The *Hildebrandt* court in its discretion, found the corrected description error met the test of *Luthi* in affording a 'reasonably certain and sufficient means of identification within the deed itself. . . .' *Hildebrandt* at 617.

"This court, in its discretion, finds that the sufficiency test of *Luthi* has not been met as to the identification of the 5-acre tract so as to put subsequent purchasers on notice of a third party interest. 'Constructive notice is a question of law for the Court. . . .' Williston on Contracts § 887B, Vol. 6 (3rd ed. 1962)."

Based upon our review of the record, we conclude that the documents recorded provided constructive notice of plaintiff's interest in the five acres. We base our conclusion upon the following reasons.

First, contrary to the conclusions of the trial court, the question is not addressed to its discretion. It is a question of law. The perceived equities of this case are immaterial in determining whether the Barlows took with notice.

Second, it is immaterial that the Chiles affidavit expressly referred only to the 75 acres actually conveyed. A person reading the affidavit and the contract for deed would realize that the excepted five acres were in the same section as the remainder of the tract itself.

Third, the trial court erred in assuming that no reasonable purchaser would refer back to the contract for deed. Title Standards Handbook, Kansas Bar Association, § 1.1 (1985) states:

"All abstracters' certificates should certify, in addition to the statement that the abstract shows all conveyances and other instruments of record affecting the real estate described, filed for record or recorded in the office of the register of deeds, that it shows 'every special clause or condition of any kind or nature other than the covenants of general warranty and quitclaim which appear in any of said instruments.' "

Thus, a purchaser may reasonably be expected to read a contract for deed that might affect his seller's title. And a purchase option is certainly a "special clause or condition" affecting title to the land.

Fourth, although it is not necessary for a deed to be properly indexed for it to give constructive notice, the fact that the contract for deed and the Chiles affidavit were both properly indexed shows that a purchaser would have found them had he looked; thus, they gave constructive notice to him. Unplatted land is indexed by the quarter section. K.S.A. 19-1210. If a purchaser conducted a numerical search, he would have found the contract for deed and the Chiles affidavit, and would have learned that a purchase option existed. Similarly, if a purchaser conducted a search using the grantor-grantee index, he would have found that his seller had entered into a contract for deed that included a purchase option on the land he was considering buying.

Finally, the trial court erred in assuming that constructive

notice of the purchase option must be clear and not misleading. The Supreme Court has held, in a slightly different context, that notice "is implied when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to inquire further, which further inquiry would inform him of the outstanding unrecorded conveyance." *Federal Savings & Loan Ins. Corp. v. Urschel*, 159 Kan. 674, Syl. ¶ 5, 157 P.2d 805 (1945) (involving claims of a third person in open possession of land). This holding is applicable here as well. If a possible cloud on the seller's title appears, the prospective purchaser must either clear the cloud or proceed at his own risk.

The trial court erred in holding that the Barlow defendants purchased their interest in the five acres without notice of plaintiff's purchase option and that they were therefore bona fide purchasers. See *Urschel*, 159 Kan. at 681 ("One who has constructive notice of an outstanding title or right is not a bona fide purchaser."). The Barlows took with notice of plaintiff's purchase option and therefore took subject to it.

## Remedy

The Barlows argue that specific performance should not be ordered because it would constitute a forfeiture, because it would lead to an unconscionable result, because "preemptive rights" are not specifically enforceable, and because the Barlows' filing of an affidavit of equitable interest constituted notice to plaintiff that his option had been revoked. Contrary to these contentions, we hold that specific performance is the appropriate remedy in this case.

In *Wilcox v. Wyandotte World-Wide, Inc.*, 208 Kan. 563, 493 P.2d 251 (1972), the court stated:

"Whether equity will decree the specific performance of a contract rests in sound judicial discretion and always depends on the facts of the particular case. [Citation omitted.] Ordinarily there is no equity in releasing a party from a fair and reasonable contract into which he freely entered unless the circumstances of the case require it." 208 Kan. at 569.

Whether a contract is fair and reasonable is generally determined as of the time it is entered into, and not as of the time of performance. As Justice Burch stated in *Niquette v. Green*, 81 Kan. 569, 106 Pac. 270 (1910):

"It is true that sometimes collateral circumstances arising after the formation of a contract may bring new factors into the relations of the parties so that hardship

would follow its enforcement, and in such cases equity may decline to compel performance by one not himself at fault. But the rise or fall of fluctuating markets works no hardship in an equitable sense. The fate of fair and just contracts freely made by competent parties can not in conscience be left to depend upon such fortuities." 81 Kan. at 584.

See also *Stauth v. Brown*, 241 Kan. 1, 11, 734 P.2d 1063 (1987) (same effect). And, although it is true that specific performance may not be granted where there is an adequate remedy at law, such a remedy, in order to defeat specific performance, *"must be as plain, adequate, complete and efficient as the remedy of specific performance and not circuitous or doubtful."* (Emphasis added.) *Scott v. Southwest Grease & Oil Co.*, 167 Kan. 171, Syl. ¶ 6, 205 P.2d 914 (1949).

It is also clear that an option to purchase may be enforced against a subsequent buyer with notice. In *Tinkler v. Devine*, 159 Kan. 308, 154 P.2d 119 (1944), a tenant had an option to purchase the land he was occupying under a lease on the same terms that might be offered to a third party. When the landlord sold the land, without notice to the tenant, to a third party who had notice of the tenant's option, the tenant brought suit against the landlord and the buyer seeking specific performance. The trial court granted specific performance and the Supreme Court affirmed, holding that "the lessee was entitled to specific performance of the contract even though the land had been conveyed to the third party." 159 Kan. 308, Syl. ¶ 2; see also *Shepard v. Dick*, 203 Kan. 164, 167, 453 P.2d 134 (1969) (real estate contract may be specifically enforced against assigns of the parties); *Leinbach v. Dyatt*, 112 Kan. 782, Syl. ¶ 4, 212 Pac. 894 (1923) ("The buyer's right to the specific performance of a written contract for the sale of land cannot be defeated by the seller conveying to one who has knowledge of the prior agreement."); and *Wilson v. Emig*, 44 Kan. 125, 129, 24 Pac. 80 (1890) ("where a specific performance will be decreed between original parties, it will lie as to parties claiming under them with knowledge").

The Barlows argue that although a purchase option may be specifically enforceable against subsequent purchasers with notice, a preemptive right is not. They are mistaken. The Supreme Court has explained the difference between a purchase option and a preemptive right as follows:

"A right of pre-emption differs from an option in that a pre-emption does not give

to the pre-emptioner the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the pre-emption at the stipulated price, and upon receiving such an offer, the pre-emptioner may elect whether he will buy, and if he elects not to buy, then the owner of the property may sell to a third party." *Anderson v. Armour & Company*, 205 Kan. 801, Syl. ¶ 1, 473 P.2d 84 (1970).

Based on this definition, the Barlows argue that a person holding a preemptive right lacks the power to compel an unwilling owner to sell. This is true, but it does not go far enough. The Supreme Court borrowed the above-quoted definition from the syllabus of a Montana case. Immediately after quoting that syllabus point in the body of its opinion, the Supreme Court also quoted the next Montana syllabus point, as follows:

"Under a lease giving [a] tenant a pre-emptive right of purchase, at such time as the owner forms a specific intention to sell such right ripens into a present enforceable contract right of the tenant to purchase." 205 Kan. at 805.

In other words, when the conditions are met for the exercise of a preemptive right, that right becomes, in effect, an option.

We therefore conclude that plaintiff is entitled to specific performance of his purchase option.

The damage award is reversed and specific performance is ordered.