In re Jorge COLON, Jr. and Antoinette Valentina Ortiz–Colon, Debtors.

Jan Hamilton, as Chapter 13 Trustee, Plaintiff,

v.

Washington Mutual Bank, FA, Defendant.

Bankruptcy No. 04–42174.
Adversary No. 05–7032.

United States Bankruptcy Court, D. Kansas.

Jan. 26, 2007.

Gary E. Hinck, Topeka, KS, for debtors.

Thomas M. Franklin, Franklin Law Firm, Kansas City, MO, for defendant.

Jan Hamilton, Topeka, KS, Chapter 13 Trustee.

## MEMORANDUM AND ORDER

JANICE MILLER KARLIN, Bankruptcy Judge.

This matter came to trial on December 14, 2006. After receipt of the parties' post-trial briefs, the Court is now prepared to rule. This matter constitutes a core proceeding,[1] and the Court has jurisdiction to decide it.[2]

## I. FINDINGS OF FACT

This is an action by the Chapter 13 Trustee to avoid the mortgage lien of Defendant, Washington Mutual Bank (Washington Mutual), on Debtors' home, and to preserve the lien for the benefit of the estate.[3] Debtors purchased a home in Shawnee County, Kansas before May 2001, and executed a mortgage to a different lender at that time. The mortgage contained the correct legal description and was properly recorded with the Register of Deeds. Debtors then refinanced that mortgage with a new lender, and granted a mortgage to Thaylor, Bean & Whitaker Mortgage Corp. The mortgage, which was later assigned to Washington Mutual, was

---

1. 28 U.S.C. § 157(b)(2)(K).

2. 28 U.S.C. § 1334.

3. Doc. 68, Pretrial Order ¶ 8.1.

then recorded with the Register of Deeds on April 14, 2003.

That mortgage describes the property in question as "LOT 29, ARROWHEAD HEIGHTS SUBDIVISION NO. 5, IN THE CITY OF TOPEKA, SHAWNEE COUNTY KANSAS. Parcel ID Number: 145–15–0–40–04–003–000 which currently has the address of 3317 SW MOUND-VIEW DR. Topeka, Kansas 66614." The only error in the description is in the lot number; the correct lot number for the property is Lot 79, not Lot 29. The street address is correct, and if one were to search the county's tax records (which are not contained within the Office of the Register of Deeds), the Parcel ID number[4] reflected in the mortgage relates to Lot 79 of Arrowhead Heights Subdivision No. 5, at the same street address.

Records retained by the Register of Deeds reflect that this mortgage was indexed in two places within that office. The first place was in the records maintained by legal description; accordingly, it was indexed with records relating to Lot 29 for the subdivision. The other place it was indexed was in the records maintained in the names of the grantor and grantee named in each recorded instrument.

The mortgage was properly cross-indexed in the grantor index under Debtors' last name. It was not, however, recorded in the index for Lot 79, the proper lot number for Debtors' home.[5] A review of the grantor index would have shown that the grantors—the Colons—had previously granted a mortgage on a different lot in the same subdivision, in Topeka—Lot 79. If one retrieved and physically reviewed the first underlying mortgage associated with that entry, one would then (and only then) note that the street address provided for that lot was identical to that provided for Lot 29.

Debtors filed their Chapter 13 petition on August 11, 2004 and claimed this real property as their exempt homestead. Pursuant to language contained in their plan authorizing this cause of action, which plan was confirmed on December 2, 2004 without objection by Washington Mutual, the Trustee initiated this adversary proceeding seeking to use his strong arm powers under 11 U.S.C. § 544[6] to avoid the lien against Debtors' homestead for the benefit of the bankruptcy estate. This Court has already ruled that the Trustee has standing to bring this action,[7] and that the confirmed plan is binding on Washington

---

**4.** The term "Parcel ID" is synonymous with "Tax ID," and is merely an identification number given to each tract of real estate by the county tax assessor for county tax purposes. Mortgages are neither recorded nor indexed in the Office of the Register of Deeds by Parcel ID/Tax ID numbers or by street address. Instead, they are only indexed in indices kept by grantor/grantee and by legal description. *See generally* K.S.A. 19–1205 and 19–1206.

**5.** On March 15, 2005, Columbian Title of Topeka, Inc. (which had apparently closed this loan) attempted to correct their lot number error by filing a Correction Affidavit dealing with both the instant mortgage and the Subordination Agreement. *See* Trustee's Trial

Exhibit 5. The timing appears to be connected to Debtors' response to Washington Mutual's Motion for Relief from Stay, which was filed about two weeks earlier in the main case (Doc. 44). Debtors claimed that the mortgage was invalid because of the incorrect lot number. Obviously, that Correction Affidavit did not exist on the relevant date—the date Debtors filed this bankruptcy proceeding, so its filing could not have provided constructive notice to the Trustee of the original filing error.

**6.** All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (2004), unless otherwise specified.

**7.** *See* Doc. 15.

Mutual.[8]

In addition to the Trustee's action to avoid the lien against Debtors' homestead, the Debtors also filed an objection to Washington Mutual's claim in which they assert that Washington Mutual's claim is unsecured. The objection to the claim is closely tied to this adversary proceeding—if the Trustee is successful in avoiding the lien, then Washington Mutual's claim is in fact unsecured and the objection will be sustained.

## II. ISSUES

Based upon the Court's prior rulings in this case,[9] the remaining issue is whether the Trustee, as a bona fide purchaser (hereafter "BFP"), would have been put on constructive notice of Washington Mutual's mortgage given the defective legal description contained in that mortgage. In order to decide this issue, the Court must decide, under the facts of this case, what steps a "reasonably cautious person" would take to obtain good title, including whether a BFP is required to search beyond the grantor/grantee index and physically peruse the text of the underlying instrument (here the mortgage), in an attempt to determine if the legal description is correct and, even if such a duty exists, whether the review of the mortgage would have put the Trustee on constructive notice of the mortgage against this particular piece of property.

## III. ANALYSIS

▆▆▆ The Trustee is attempting to avoid the mortgage on Debtors' homestead

pursuant to § 544(a), which allows trustees to avoid interests in real property that are unperfected on the date of filing.[10] The purpose of this statute is to ensure the goal of equal distribution of a debtor's assets among its general nonpriority creditors. The determination of whether a creditor's security interest is unperfected, and therefore avoidable under § 544(a), is controlled by state law.[11] The Trustee's right to avoid Washington Mutual's mortgage is thus determined by whether Washington Mutual's mortgage would be deemed properly perfected (recorded), under Kansas law, when the bankruptcy was filed on August 11, 2004.

The Court has already ruled that the Chapter 13 Trustee qualifies as a BFP under § 544(a)(3),[12] and can avoid any lien a BFP could avoid. The Court has also already ruled that the Trustee can avoid the mortgage as a hypothetical lien creditor under § 544(a)(1) if the error in the mortgage rendered the mortgage unperfected.[13] The Court's previous analysis on those issues is incorporated into this ruling.

▆▆▆ As the moving party, the Trustee bears the burden of proving that he meets the requirements of a BFP under § 544(a)(1). "As a hypothetical bona fide purchaser, the trustee is deemed to have conducted a title search, paid value for the property, and perfected its interest as a legal holder as of the date of commence-

---

8. Doc. 27.

9. Docs. 15, 27 and 33.

10. *Morris v. CIT Group/Equip. Fin., Inc. (In re Charles),* 323 F.3d 841, 842–43 (10th Cir. 2003) (holding that § 544(a) confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date bankruptcy peti-

tion is filed and allows the trustee to avoid any unperfected liens on property belonging to the bankruptcy estate).

11. *Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1533 (10th Cir.1987).

12. Doc. 27.

13. *Id.*

ment." [14] Whether or not a buyer of land takes title with constructive notice of the contents of an instrument filed with the Register of Deeds is a question of law. [15]

■ What remains to be decided is whether a BFP, in researching the records statutorily maintained by the Shawnee County Register of Deeds, should have reasonably found this mortgage within that office, notwithstanding its reference to an incorrect lot number, and reasonably determined it to be a cloud on the title. As a preliminary matter, the Court is unaware of any legal precedent that would require a BFP to conduct a search equivalent in scope to that a title insurance company would conduct when issuing a title insurance policy, and holds that no such legal duty exists. The Trustee, as a BFP, is only required to take the steps a reasonable person would undertake in an attempt to discover a cloud on the title of property he or she is purchasing, not that of a title insurance company, which has much greater expertise and resources at its disposal than an ordinary BFP, and which, as an insurer, has greater exposure for failing to expose title issues. The Court also finds that a BFP is not required to hire a title insurance company to conduct the title search.

■■ The purpose of recording instruments of conveyance is to impart to subsequent purchasers notice of instruments that affect title to the specific tract of land in which the subsequent purchaser is interested. [16] The applicable state law in this instance is found in K.S.A. 58–2222, which creates and defines bona fide purchaser status and record notice. K.S.A. 58–2222 provides:

> Every such instrument [conveying real estate or an interest therein] in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

Thus, the proper filing of a mortgage imparts notice of its contents to a subsequent purchaser.

■ Subsequent purchasers are charged with constructive notice of the presence and contents of recorded interests in land, such as mortgages, if the interest is "sufficiently described," even when they were not a party to the conveyance. [17] Constructive notice is implied "when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to inquire further . . . ." [18] "If a possible cloud on the seller's title appears, the prospective purchaser must either clear the cloud or proceed at

---

**14.** 5 Collier on Bankruptcy ¶ 544.08 (Lawrence P. King ed., 15th ed. rev.2005).

**15.** *Miller v. Alexander*, 13 Kan.App.2d 543, 549, 775 P.2d 198 (1989). *See also Schwalm v. Deanhardt*, 21 Kan.App.2d 667, 668, 906 P.2d 167 (1995) (finding the question of whether Deanhardt had notice of the Schwalms' mortgage was matter of law, citing *Stith v. Williams*, 227 Kan. 32, 605 P.2d 86 (1980)). At page 8 of the Court's Order Setting Matter for Scheduling Conference (Doc. 33), the Court did not grant summary judgment to the Trustee, notwithstanding that

the key issue is a question of law, because there was a material question of fact regarding whether a BFP, when reviewing the indices within the Register of Deeds, would reasonably have found Washington Mutual's mortgage.

**16.** *Luthi v. Evans*, 223 Kan. 622, 629, 576 P.2d 1064 (1978).

**17.** *Id.* at 629, 576 P.2d 1064.

**18.** *Miller v. Alexander*, 13 Kan.App.2d at 550, 775 P.2d 198.

his own risk."[19] A buyer who has constructive notice of an outstanding title or right is not a bona fide purchaser and takes subject to the outstanding title or right.[20]

The Kansas Supreme Court has analyzed the relevant Kansas statutes on the issue of constructive notice in the case of *Luthi v. Evans.*[21] In that case, the Court stated:

> We have concluded that the statutes contained in K.S.A. Chapter 58 pertaining to conveyances of land and the statutes contained in Chapter 19 pertaining to recordation of instruments of conveyance constitute an overall legislative scheme or plan and should be construed together as statutes in pari materia (*City of Overland Park v. Nikias,* 209 Kan. 643, 498 P.2d 56). It also seems obvious to us that the purpose of the statutes authorizing the recording of instruments of conveyance is to impart to a subsequent purchaser **notice of instruments which affect the title to a specific tract of land in which the subsequent purchaser is interested at the time**. From a reading of all of the statutory provisions together, we have concluded that the legislature intended that recorded instruments of conveyance, to impart constructive notice to a subsequent purchaser or mortgagee, should describe the land conveyed with sufficient specificity so that the **specific** land conveyed can be identified. As noted above, K.S.A. 58–2203 and 58–2204 require a deed to *describe the premises.* A description of the property conveyed should be considered sufficient if it identifies the property or affords the means

of identification **within the instrument itself or by specific reference to other instruments recorded in the office of the register of deeds**. Such a specific description of the property conveyed is required in order to impart constructive notice to a subsequent purchaser.[22]

This language provides guidance for this Court's decision.

In addition, the Kansas Supreme Court, even before it decided *Luthi,* decided *Hollinger v. Imperial Warehouse Co.,*[23] which has facts fairly similar to ours. In *Hollinger,* Imperial gave a mortgage to John Ketchersid (who later assigned that mortgage to Appellant Hollinger) to secure a note. The parties mutually intended for Imperial to mortgage its interest in real property it owned in English **Fifth's** addition to the City of Wichita. Unfortunately, the mortgage mistakenly described the property as "Lot 26 in English's addition to the City of Wichita," a lot that actually existed in a neighboring subdivision. The mortgage omitted reference to the fact the property was actually located in another subdivision called "English's **Fifth** addition." Imperial had no ownership interest in the real property actually described in the mortgage, just like Debtors here have no interest in Lot 29, the lot number found in Washington Mutual's mortgage.

Imperial then deeded its interest to Ketchersid. In turn, Ketchersid deeded his interest to co-defendants Miles, who through a series of transfers became the owners of the property. Their immediate predecessors in interest had executed a mortgage to Wheeler–Kelly–Hagny, which was also a named defendant in the case.

19. *Id.*

20. *Id.* at 551, 775 P.2d 198.

21. 223 Kan. at 629, 576 P.2d 1064.

22. *Id.* (Italicized words were so emphasized in the original; this Court has added the bolded language for emphasis)

23. 122 Kan. 709, 253 P. 215 (1927).

Wheeler–Kelly–Hagny had obtained an abstract of title prior to its receipt of the mortgage, and the earlier Imperial mortgage (that had been recorded in English's addition instead of English's **Fifth** addition) was not reflected, because it had not been recorded in the legal description index for Lot 26 of English's **Fifth** addition. Appellant Hollinger ultimately brought suit in an attempt to reform and enforce the mortgage, but defendants Miles claimed to be bona fide purchasers, and defendant Wheeler–Kelly–Hagny claimed to be an innocent mortgagee.

The defendants all argued that the recordation of the mortgage in the records for Lot 26 in the incorrect city addition did not act to serve constructive notice upon them of the existence of that mortgage, and should not be enforced against them. Hollinger, conversely, argued that when the abstractor researched the record, the general index, in the column for legal description, should have given notice to them of the Imperial mortgage.

The Kansas Supreme Court first held that even had the abstractor found and viewed the actual mortgage instrument, the mortgage "would have referred to a lot in another addition to the city, and there would have been no reason why the abstracter should have examined it further." [24] The Court further noted that neither the abstractor nor the defendants would be required to know what other property Imperial might own, convey or mortgage in the city of Wichita. In other words, the abstractor would not be expected to know whether Imperial happened to own Lot 26 in English's addition as well as Lot 26 in English's Fifth addition.

Appellant further argued that the abstractor had the duty to physically review the actual recorded mortgage, instead of merely relying on the entries in the index. The Court, although declining to hold such a duty existed, nevertheless held that even if the abstractor was required to do so, an examination of the actual mortgage would have disclosed that it was a lien on an entirely different lot in another addition than the property being examined for marketability. The Court ultimately held that nothing in the legal description index, or in the mortgage, itself, would have caused the abstracter to "suspect that the mortgage was intended to be a lien upon this lot," [25] and "there was nothing in the mortgage as recorded to impart notice to subsequent purchasers and mortgagees" of the lot Imperial actually did own. For a recorded instrument to serve as constructive notice to such a subsequent purchaser or mortgagee, the Court noted that the instrument "must be in the line of title of such property." [26] The Court thus refused to reform the mortgage against the interests of the subsequent bona fide purchaser and mortgagee who had no actual or constructive notice of the existence of the mortgage sought to be reformed.

Applying these holdings to this case, it is clear that had a BFP examined the index kept under the legal description for Lot 79 of Arrowhead Heights subdivision, it would not have found Washington Mutual's mortgage (in Lot 79) recorded under Lot 29 of the same subdivision. Even if a bona fide purchaser (the Trustee, here) had somehow become aware of the existence of the mortgage on Lot 29 (by looking at grantor indices, for example), and had chosen to examine the actual mortgage, nothing in that mortgage would

---

24. 122 Kan. at 713, 253 P. 215.

25. *Id.*

26. *Id.* at 218.

have informed the purchaser that the Colons did not also own Lot 29 in Arrowhead Heights subdivision, or that the recorded mortgage contained any error.[27]

Washington Mutual heavily relies on the argument that because there existed a "three-part property description" within the mortgage—the Lot number, the street address, and the tax/Parcel ID number, an error in "only" the lot number should not be fatal because of the existence of the other identifiers. As a preliminary matter, however, the Register of Deeds does not index or maintain records by street address or tax/Parcel ID number,[28] so even if a purchaser had the duty to cross-check other records within the Register of Deed's office (the existence of which duty this Court does not today decide), no such records exist in that office by street number or tax ID number.

Secondly, Washington Mutual does not claim there is evidence that the Trustee, or a hypothetical bona fide purchaser, would have had actual notice that Lot 29 was the same real property as 3317 SW Moundview Drive, or that the noted Parcel ID number is actually associated with Lot 79, instead of Lot 29. The Court doubts even the owners, themselves, would know this information without consulting other records. Even if there was evidence of such

actual notice, § 544(a) immunizes the trustee from such actual notice.

There is also nothing within the mortgage, itself, that would give a BFP constructive notice of those facts, or that would put a reasonable purchaser on notice that something was awry, requiring further investigation, as was the case in *Hildebrandt v. Hildebrandt.*[29] *Hildebrandt* involved a tract known as "Hildebrandt Island." The grantor conveyed the island to six of his seven children. The legal description used the wrong section number in the general description of the quarter section where the island was located, but later within the same instrument used the correct section number in the metes and bounds description of the island's exact location. Before the grantees could file a corrected deed, the grantor granted a 25–year lease to his seventh child, the defendant in the case.

In holding that the original deed contained a sufficient description to impart constructive notice under the *Luthi* standard, the Kansas Court of Appeals stated that

The error in the deed complained of by the defendant was a reference in the beginning of the description to "Section 24." This is followed, however by a metes and bounds description commencing at "the southwest corner of Section

---

**27.** The Court rejects Washington Mutual's suggestion that a reasonably cautious person would have had the duty to read the contents of the mortgage, which apparently required owner occupation in its small print, and then physically visit the occupants at the address on the mortgage to confirm their identity. The only expert witness to testify—for the Trustee— rejected that assertion, and the Court can find nothing in Kansas law to require it.

**28.** *See generally* K.S.A. 19–1205 and 19–1206. The expert also explained that because street addresses and tax ID numbers can and do change over time, and legal descriptions rare-

ly do (or if they do, they require legal proceedings that are then indexed within the Register of Deeds), no reasonable person relies on street addresses or tax numbers. The expert did admit that his title insurance company does sometimes cross-check that information, out of an abundance of caution, because it is in the business of insuring title and because it maintains a computer database (title plant) allowing it to do so with ease, but that doing so would not be required even for a title company.

**29.** 9 Kan.App.2d 614, 683 P.2d 1288 (1984).

34" which clearly places the 5.64 acres in question in Section 34, the proper section. This description, together with the name "Hildebrandt Island," affords a reasonably certain and sufficient means of identification within the deed itself for identifying the property conveyed. The fact that it may not have been properly indexed by the register of deeds will not prevent constructive notice under K.S.A. 58–2222.[30]

Conversely, under the facts of this case, there is nothing within the four corners of the instrument that would put an innocent purchaser researching the title to this property on notice that he needed to check further—outside the four corners of the instrument, again assuming a BFP would even have to review the instrument, itself.

 Washington Mutual also relies on a subordination agreement that the second mortgage holder gave to Washington Mutual's predecessor. But that subordination agreement also contained the incorrect legal description (as both documents appear to have been drafted by the same title company), and was also erroneously recorded under Lot 29. The existence of that subordination agreement, therefore, also does not help Washington Mutual's cause.

The Court thus finds that the recorded mortgage was insufficient to impart constructive knowledge of the mortgage to the Trustee. Because the Trustee did not have constructive notice of the mortgage, he does qualify as a bona fide purchaser under § 544(a)(3) and can avoid the mortgage of Washington Mutual.

 Washington Mutual also asserts, correctly, that even if the Trustee can avoid the mortgage, he does not obtain any rights to the underlying promissory note. It claims that even if the mortgage is avoided, Washington Mutual retains all of its rights under the note. This is true, but once its mortgage is avoided, its claim becomes a general unsecured subject to discharge in this bankruptcy upon Debtors' completion of their plan. Washington Mutual is thus only entitled to a pro-rata share of the estate property distributed to all general unsecured creditors, if any.[31]

 The Bankruptcy Appellant Panel for the Tenth Circuit Court of Appeals has very recently confirmed that " '[a]bsent an agreement between the Trustee and the debtor requiring the debtor to pay for the [collateral], the Trustee has no right to collect anything from the debtor in as much as the Trustee's rights are solely in the [collateral].' "[32] This does not help Washington Mutual, however, because in this case, the Trustee and Debtors have entered into just such an agreement. That agreement is set forth in Debtor's now confirmed Chapter 13 plan.[33] In that plan, Debtors agree to provide payments to the Trustee in exchange for the ultimate release of the estate's interest in the mortgage. Neither Washington Mutual, nor any other creditor, objected to the provisions of this plan, and it is now binding.[34]

---

30. *Hildebrandt,* 9 Kan.App.2d at 617, 683 P.2d 1288.

31. *See In re Rubia,* 257 B.R. 324 (10th Cir. BAP 2001) (noting that once a lien is avoided, the creditor holds a general unsecured debt).

32. *In re Haberman,* 347 B.R. 411 (10th Cir. BAP 2006) (quoting *In re Rubia,* 257 B.R. at 329.)

33. Doc. 4 in main bankruptcy case (Debtors' Chapter 13 Plan) and Doc. 24 in main bankruptcy case (Order Confirming Plan).

34. See Doc. 33 (Order Setting Matter for Scheduling Conference) wherein the Court held that the failure of Washington Mutual, or any other creditor, to object to Debtors' Chapter 13 plan bars Washington Mutual from now revisiting those issues. The Court incor-

The Trustee's right to payment is, therefore, not here derived from the underlying note, which is still admittedly held by Washington Mutual, but rather by Debtors' promise that they will pay the stated amount to the Trustee required by the confirmed plan, in exchange for the Trustee's ultimate release of that mortgage upon entry of the Discharge Order.

## IV. CONCLUSION

The Court finds that the Trustee can avoid the mortgage held by Washington Mutual under § 544(a). Because the real estate description in the mortgage does not sufficiently describe the property in question, it does not impart constructive knowledge of its existence to the Trustee in his capacity as a bona fide purchaser. Accordingly, the Trustee can avoid the mortgage as a hypothetical lien creditor under § 544(a)(1) or as a bona fide purchaser under § 544(a)(3).

Based upon this avoidance, Washington Mutual's claim will be treated as a general unsecured claim in Debtors' Case No. 04–42174. That claim will be discharged if Debtors complete their plan. In addition, the mortgage lien is now held by the Trustee for the benefit of the Chapter 13 estate. That mortgage will be released by the Trustee when Debtors complete their plan.

**IT IS, THEREFORE, BY THE COURT ORDERED** that judgment is entered in favor of Plaintiff, Jan Hamilton, Chapter 13 Trustee, and against Defendant, Washington Mutual Bank, FA on the Trustee's Complaint. The mortgage lien held by Washington Mutual Bank, FA. is avoided for the benefit of the bankruptcy estate. For that reason, the Court denies the Motion for Relief from Stay [35] filed by Mortgage Electronic Registration Systems, Inc, by Washington Mutual Bank, FA. in the main case.

**IT IS FURTHER ORDERED** that Debtors' Objection to the claim of Washington Mutual Bank, FA. in Case No. 04–42174 [36] is sustained. The claim of Washington Mutual Bank, FA. in Case No. 04–42174 will be treated as a general unsecured claim, and discharged, upon Debtors' completion of their confirmed plan.

**IT IS FURTHER ORDERED** that the foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Fed. R. Bankr.P. 9021 and Fed.R.Civ.P. 58.

porates into this decision its reasoning set forth in its prior orders.

**35.** Doc. 39.

**36.** Doc. 16.