**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In the Matter of: JORGE COLON;
ANTOINETTE VALENTINA ORTIZ-
COLON, a/k/a Toni Ortiz-Colon,

      Debtors,

_____

JAN M. HAMILTON, Trustee,

      Plaintiff - Appellee,

    v.

WASHINGTON MUTUAL BANK
FA,

      Defendant - Appellant,

_____

JORGE COLON; ANTOINETTE
VALENTINA ORTIZ-COLON,

      Appellees.

No. 07-3313

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY**
**APPELLATE PANEL FOR THE DISTRICT OF KANSAS**
**(D.C. NO. KS-07-023)**

---

Thomas M. Franklin, The Franklin Law Firm, Kansas City, Missouri, for
Defendant - Appellant.

Jan Hamilton, Chapter 13 Trustee, (Teresa L. Rhodd, Staff Attorney, Office of Chapter 13 Trustee, with her on the brief), Topeka, Kansas, for Plaintiff - Appellee.

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HARTZ**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

A bankruptcy trustee, who acts in the interests of the debtor's general creditors, may acquire for the bankruptcy estate a greater right to a debtor's real property than the debtor himself had. In particular, if there is a lien on a piece of property, the bankruptcy estate may take the property free of the lien (that is, avoid the lien) if the lien would not bind a hypothetical bona fide purchaser (BFP) of the property from the debtor. On this appeal we must decide whether this rule permits a trustee to avoid a mortgage on the ground that it misstates the lot number in its description of the property.

Washington Mutual Bank (the Bank) holds a recorded mortgage on the house of the Debtors in this case, Jorge Colon Jr. and Antoinette Ortiz-Colon. The mortgage recites the correct street address and parcel identification number for the house but misstates the lot number. The bankruptcy court, affirmed by this circuit's Bankruptcy Appellate Panel (BAP), held, applying Kansas law, that because of this error a purchaser would not be on constructive notice of the

Bank's mortgage.  It therefore allowed the bankruptcy trustee, Jan Hamilton, to avoid the mortgage.  We disagree and reverse because a purchaser is deemed to know the contents of recorded documents in the Debtors' chain of title and, armed with this knowledge, a reasonably prudent purchaser would readily discover that the Bank's mortgage encumbers the Debtors' house.

The parties and the courts below were apparently unaware of *Bacon v. Lederbrand*, 160 P. 1029 (Kan. 1916), which holds that a purchaser of real estate in Kansas is deemed to have "notice of the *contents* of all the prior recorded deeds and mortgages" in the grantor's chain of title, *id.* at 1030 (emphasis added), not just the contents of the county register's indices.  The purchaser "is chargeable with notice of the facts appearing upon their face, and also with knowledge of all facts suggested therein, and which, with the exercise of reasonable prudence and diligence, he might have ascertained."  *Id.* (internal quotation marks omitted).  Here, recorded documents in the Debtors' chain of title give the same street address and parcel identification number as the Bank's mortgage, together with the correct lot number.  A recorded Subordination Agreement also clearly indicates that the Bank's mortgage is on the same property as the subordinated second mortgage on the Debtors' house.  We hold that one exercising "reasonable prudence and diligence," *id.*, would have determined that the Bank has a mortgage on the Debtors' house.  Therefore, the mortgage cannot be avoided by the trustee.

We now summarize the proceedings below. Then we turn to the authority overlooked in those proceedings, explaining why that authority requires reversal and distinguishing the cases relied upon by the bankruptcy court, the BAP, and the trustee.

## I.    BACKGROUND

Under 11 U.S.C. § 544(a)[1] a bankruptcy trustee can avoid a mortgage if it could be avoided by a hypothetical lien creditor or by a hypothetical BFP of the property. The trustee's power to avoid transfers under this provision of the bankruptcy code is known as the "strong arm" power. *Morris v. Hicks (In re Hicks)*, 491 F.3d 1136, 1140 (10th Cir. 2007); *see* 5 Collier on Bankruptcy

---

[1]The statute provides, in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>     . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

¶ 544.02 (Lawrence P. King ed., 15th ed. 2000) (referring to § 544(a) as the "strong arm clause"). The status and rights of the hypothetical lien creditor and BFP are determined by state law. *See Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir. 1991); *Midatlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir. 1994). Under Kansas law a BFP—a purchaser for value who has neither constructive notice, *see Beams v. Werth*, 438 P.2d 957, 967 (Kan. 1968), nor actual notice, *see Larson Operating Co. v. Petroleum, Inc.*, 84 P.3d 626, 632 (Kan. Ct. App. 2004), of an encumbrance—takes the property free of the encumbrance. *See Miller v. Alexander*, 775 P.2d 198, 202–04 (Kan. Ct. App. 1989).

After the Debtors filed for relief under Chapter 13 of the Bankruptcy Code, the trustee filed an adversary proceeding in April 2005 to avoid the Bank's mortgage on the Debtors' house under 11 U.S.C. § 544. That mortgage was created in 2003 to secure the Debtors' refinancing of a purchase-money mortgage on their house at 3317 SW Moundview Drive in Topeka, Kansas. The mortgage was recorded with the Shawnee County Register of Deeds. It correctly stated the house's address and its parcel identification number (which is assigned by the county clerk and used by the county appraiser for tax purposes). But it also described the property as Lot 29 in Arrowhead Heights Subdivision No. 5, when the correct description is Lot 79 in the subdivision. The trustee based his avoidance claim on this error in the lot number.

The Bank filed a motion for summary judgment, which was denied by the bankruptcy court. The court ruled that the trustee's avoidance claim turned on whether he could "prove that the mortgage filed by [the Bank] would not show up in the chain of title during a reasonable title search in the Office of the Register of Deeds, and thus that the mortgage, as recorded, was insufficient to provide constructive notice." Aplt. App. Vol. I at 153 (Order Setting Mot. for Scheduling Conference, Feb. 8, 2006). It set a bench trial on that issue.

At trial the title documents, the facts surrounding the Debtors' ownership of the property, and the mortgage history of the property were submitted by stipulation. The relevant recorded documents show the following:

1.     The 1999 one-page deed by which the Debtors acquired the property gives the Sellers' address as 3317 SW Moundview Dr. and contains the correct lot number for the conveyed property. In text aligned vertically along the left edge of the page, it states: "Property Address: 3317 SW Moundview Dr." Aplt. App. Vol. III at 595.

2.     The purchase-money mortgage, filed with the county register one minute after the deed, describes the property as "LOT 79 [the correct number], ARROWHEAD HEIGHTS SUBDIVISION NO. 5, which has the address of 3317 SW MOUNDVIEW DR. . . . ." *Id.* at 680–81.

3.     A second mortgage on the property, given by the Debtors in May 2001 and recorded on June 1, similarly provides the property's correct lot

number and street address; in the property description it also recites "TAX ID#: 145-150-40-04-003-00-0." *Id.* at 694.

4.      As previously noted, the mortgage at issue (which was later transferred to the Bank), filed on April 14, 2003, contains the incorrect lot number but the correct street address and parcel identification number.  It recites that the mortgage secures "the following described property located in the COUNTY of SHAWNEE:  LOT 29 [not 79], ARROWHEAD HEIGHTS SUBDIVISION NO. 5, IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS.  Parcel ID Number: 145-15-0-40-04-003-000 which currently has the address of 3317 SW MOUNDVIEW DR. Topeka, Kansas 66614." *Id.* at 664.

5.      Filed a few minutes later is a Subordination Agreement, which subordinates the second mortgage to the Bank's mortgage.  It contains the same lot-number error as the Bank's mortgage.  The Agreement describes the second mortgage as a mortgage "covering property located at 3317 SW Moundview Dr., Topeka, KS 66614 ('Property') recorded on 6/1/2001, as BOOK: 3508, PAGE: 711 . . .; and [LOT *29*, ARROWHEAD HEIGHTS SUBDIVISION NO. 5 . . .]."  (The bracketed language was inserted through a footnote in the document.)  The book and page numbers accurately refer to the original second mortgage, which recited the correct lot number.  *Id.* at 696.

6.    The release, filed on May 13, 2003, of the 1999 purchase-money mortgage contains the correct lot number and lists the Debtors' mailing address as 3317 SW Moundview Dr.

The trustee called as a witness the Shawnee County Register of Deeds, who testified that one could search for documents in her office by book and page numbers, by a person's name, and by "legal description," but not by street address. *Id.* at 523. (The term *legal description* is sometimes used as the label for a property description by block and lot number in a named subdivision. *But see* Black's Law Dictionary, 913 (8th ed. 1999) (defining *legal description*: "A formal description of real property . . . complete enough that a particular piece of land can be located and identified. . . . The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat.").) She did not describe the format of the indices or other search tools available in her office.

The trustee also submitted an expert report by Kyle Mead, an examining attorney for a local title-insurance company. Mead opined as follows:

> [I]f a reasonable title search was conducted in the office of the Shawnee County Register of Deeds, based on the proper legal description of the subject property, which is Lot 79, Arrowhead Heights Subdivision No. 5, in the City of Topeka, Shawnee County, Kansas, the mortgage in question would not be found. If a reasonable title search was conducted in the office of the Shawnee County Register of Deeds, based on the name of the debtor, which search would list all mortgages which the debtor had executed, the mortgage in question would be found, but it would not show that the

subject property was intended to be encumbered, because the legal description appearing on the mortgage is Lot 29, Arrowhead Heights Subdivision No. 5, in the City of Topeka, Shawnee County, Kansas.

The basis for these opinions is that standard title industry search procedure is to search using the proper legal description for the property as the primary identifier. The information used in forming these opinions is training and experience, and collected experience in the industry, and as reflected in the Kansas Title Standards Handbook.

*Id.* Vol. I at 186.

The Bank called Mead to the stand. He testified that his company does not search records at the register's office but images all documents filed with the register and maintains its own files. Office personnel then extract relevant information from the document and enter it in the company's database. Among the information placed in the database is the property's street address. He indicated that the street address is important information for his title-insurance work and that as a title insurer he would have needed to investigate whether the Bank's mortgage was the replacement for the purchase-money mortgage. Thus, the search he was asked to perform for his report to the trustee was not as extensive as what he would perform if asked to insure a purchase of the house. On cross-examination by the trustee, however, Mead said that he would not expect a reasonably prudent person to conduct as extensive a search as a title company performs and that the legal description is "the keystone" for determining the location of real estate because it is more stable than a street address or parcel

identification number. *Id.* Vol. III at 580. He added that using street addresses and parcel numbers as "the standard" would create problems for title companies because they are not "uniform." *Id.* at 581. Mead also reiterated the essence of the first of the above-quoted paragraphs of his report. With respect to the second quoted paragraph, he conceded on direct examination by the Bank that the Kansas Title Standards Handbook, a title-industry manual, does not provide guidance on how to conduct a title search, and he could not point to any Kansas statute that gives priority to a "legal description" (by block and lot numbers) over any other form of description of the property. No other witnesses testified.

The Bank contended that the trustee was charged with constructive notice of its mortgage. It argued that because the mortgage document identified the Debtors as mortgagors and identified the property by its street address and parcel identification number, and because Kansas constructive-notice law requires only that the property description be sufficient to identify the property, a purchaser would be on notice that the Debtors' house was the property intended to secure the mortgage. It also argued that Kansas law requires a purchaser to examine the contents of recorded documents in a property's chain of title and that the other mortgage documents affecting the property were sufficient to put a purchaser on constructive notice:

> Consideration of the street address and parcel identification number, and the Mortgage as the last in the chain of title of a series of succeeding mortgages that had included a legal description using

Lot 79 would compel a reasonable purchaser to draw the conclusion that the Mortgage was given on Lot 79 at 3317 SW Moundview Drive, or to ask more questions about what property the mortgage covered.

*Id.* Vol. I at 294.

The trustee countered that a reasonable search of the records kept by the Shawnee County Register of Deeds would not put a purchaser on notice of the Bank's lien on the Debtors' house. A search for Lot 79 (the correct lot number) in the numerical index for the tract would not turn up the mortgage, he contended, and a grantor-index search under the Debtors' names would show the Bank's mortgage to encumber a different lot (Lot 29). Further, because the register of deeds does not index documents by street address or parcel identification number, the Bank's theory that these descriptions should provide constructive notice would "upset the title standards of the state" and require "extraordinary searches" to ensure good title. *Id.* Vol. III at 519.

The bankruptcy court ruled in the trustee's favor. *See Hamilton v. Wash. Mut. Bank, FA (In re Colon)*, 376 B.R. 22 (Bankr. D. Kan. 2007). It found that "[r]ecords maintained by the Register of Deeds reflect that this mortgage was indexed . . . with records relating to Lot 29." *Id.* at 25. Although it "was properly cross-indexed in the grantor index under Debtors' last name[,] . . . [a] review of the grantor index would have shown that grantors—the Colons—had

previously granted a mortgage on a different lot in the same subdivision, in

Topeka—Lot 79." *Id.* The court defined the issue as whether a purchaser

> would have been put on constructive notice of [the Bank's] mortgage given the defective legal description . . . . [T]he Court must decide, under the facts of this case, what steps a "reasonably cautious person" would take to obtain good title, including whether a BFP is required to search beyond the grantor/grantee index and physically peruse the text of the underlying instrument . . . to determine if the legal description is correct and, even if such a duty exists, whether the review of the mortgage would have put the Trustee on constructive notice of the mortgage against this particular piece of property.

*Id.* at 26. The court later explained that a reasonable person need not undertake

the search that would be performed by a title examining company, which has

greater expertise, resources, and exposure to liability than an ordinary person. *Id.*

at 27.

The bankruptcy court described Kansas case law as stating that

"[s]ubsequent purchasers are charged with constructive notice of the presence and

contents of recorded interests in land . . . if the interest is sufficiently described,"

*id.* (internal quotation marks omitted), and that "[c]onstructive notice is implied

'when it consists of knowledge of facts so informing that a reasonably cautious

person would be prompted to inquire further.'" *Id.* (quoting Miller, 775 P.2d at

204). It emphasized language in *Luthi v. Evans*, 576 P.2d 1064 (Kan. 1978), that

the purpose of the recording statutes is to give subsequent purchasers "notice of

instruments which affect the title to a *specific tract of land* in which the

subsequent purchaser is interested at the time," and that a property description is adequate "if it identifies the property or affords the means of identification within the instrument itself or by specific reference to other instruments recorded in the office of the register of deeds." *Id.* at 1070 (quoted in *In re Colon*, 376 B.R. at 28).

The court placed its principal reliance, however, on *Hollinger v. Imperial Warehouse Co.*, 253 P. 215 (Kan. 1927), whose facts it called "fairly similar to ours." *In re Colon*, 376 B.R. at 28. The property-description error in that case arose from confusion between two additions to the City of Wichita that had been laid out and platted by a Mr. English. One addition was English's addition; the other was English's Fifth addition. The Kansas Supreme Court held that a mortgage describing the subject property as lot 26 of English's addition, rather than correctly describing it as lot 26 of English's Fifth addition, did not impart constructive notice. Even if the defendant in the case, "or the abstracter as [his] agent," had a duty to search the contents of the mortgage because of the common grantor, "an examination of the record of the mortgage at length would have disclosed that it purported to be a lien upon another lot in another addition . . . , and did not purport to be a lien upon the lot the title to which they were then searching." *Hollinger*, 253 P. at 217. Nothing in the mortgage "would cause an examiner of the record of the title to lot 26 . . . [of] English's Fifth addition . . . to

suspect that the mortgage was intended to be a lien upon this lot." *Id.* The

bankruptcy court followed *Hollinger*:

> [I]t is clear that had a BFP examined the index kept under the legal
> description for Lot 79 of Arrowhead Heights subdivision, it would
> not have found [the Bank's] mortgage (in Lot 79) recorded under Lot
> 29 of the same subdivision. Even if a bona fide purchaser (the
> Trustee, here) had somehow become aware of the existence of the
> mortgage on Lot 29 (by looking at grantor indices, for example), and
> had chosen to examine the actual mortgage, nothing in that mortgage
> would have informed the purchaser that the Colons did not also own
> Lot 29 in Arrowhead Heights subdivision, or that the recorded
> mortgage contained any error.

*In re Colon*, 376 B.R. at 29–30.

The court rejected the Bank's argument that the presence of the correct

street address and parcel identification number in the mortgage would suffice for

notice. Because the register of deeds does not index recorded instruments using

either of those identifiers, the court reasoned, there would be no way to cross-

check other records on that basis—even if there were a duty to cross-check other

records, a question the court thought it unnecessary to decide.

The bankruptcy court distinguished *Hildebrandt v. Hildebrandt*, 683 P.2d

1288 (Kan. Ct. App. 1984). The deed at issue in *Hildebrandt* misstated the

section number, but the correct number appeared in the metes-and-bounds

description later in the document, as did the name "Hildebrandt Island," which

encompassed the property. Taken together, this information "afford[ed] a

reasonably certain and sufficient means of identification within the deed itself for

-14-

identifying the property conveyed." *Id.* at 1290. The bankruptcy court said that *Hildebrandt* was inapposite because "nothing within the four corners of the [Bank's mortgage] . . . would put an innocent purchaser researching the title to this property on notice that he needed to check further." *In re Colon*, 376 B.R. at 31.

Finally, the court rejected the Bank's argument that the Subordination Agreement provided constructive notice, stating that the agreement misidentified the mortgaged property as Lot 29 "and was also erroneously recorded under Lot 29." *Id.*

The bankruptcy court therefore held that because of the mortgage's error in the lot number, a subsequent purchaser would not be on constructive notice of the mortgage under Kansas law, and the trustee could avoid the mortgage as a hypothetical BFP under § 544(a)(3) or as a hypothetical lien creditor under § 544(a)(1).

The Bankruptcy Appellate Panel affirmed, adopting the bankruptcy court's reasoning that the mortgage's erroneous lot number precluded constructive notice to a purchaser. *See Hamilton v. Wash. Mut. Bank, FA (In re Colon)*, 376 B.R. 33 (B.A.P. 10th Cir. 2007). It held, however, that because the bankruptcy court's decision under § 544(a)(3) was correct, there was no need to review its decision with respect to § 544(a)(1). *Id.* at 37.

## II.    DISCUSSION

"[W]e treat the BAP as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they certainly may be persuasive). We review matters of law de novo, and with respect to factual findings (which are made only by the bankruptcy court, not the BAP), we review for clear error." *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1248 (10th Cir. 2008).

Resolution of this appeal requires us to determine to what extent a purchaser is put on notice of the contents of title documents properly filed with a county register of deeds in Kansas. The applicable Kansas statute, originally enacted in 1868, would appear to state that one is on notice of the contents of every properly filed document. Kan. Stat. Ann. § 58-2222 (2005) states:

> Every such instrument in writing [conveying an interest in land], certified and recorded in the manner hereinbefore prescribed [that is, by a county register of deeds under Kan. Stat. Ann. § 58-2221], shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

But no one could be expected to read every document filed with the county register. Accordingly, the Kansas statutes provide for indexing. Two indices are required by Kan. Stat. Ann. § 19-1205 (2007) for every filed instrument: one lists the instruments in alphabetical order by the name of each grantor, *see id.* § 19-1205(a); the other is an alphabetical index by the name of each grantee, *see id.* § 19-1205(b). In addition, counties have the option (which the great majority of counties have exercised) to provide numerical indices of instruments of

conveyance, generally one index for each quarter section. *See id.* §§ 19-1209, 19-1210 (2007); *Miller*, 775 P.2d at 204.

The requirement of grantor and grantee indices is unsurprising because the standard method for title searches has long been to examine the chain of title. A "vendor's chain of title" is "the chain of recorded conveyances made to the successive holders of the record title and those made by them while respectively the holders thereof." IV A. James Casner et al., American Law of Property § 17.17 at 591 (1952). A chain-of-title search for a property confirms (or disproves) the right of the purported owner to transfer an interest in the property. The searcher first constructs a chain of grantors of the property, using the grantee index to find the deed to the purported owner from a prior grantor, returning to the grantee index to find the deed to that prior grantor from an earlier grantor, and continuing that process for an appropriate period of time. The searcher then uses the grantor index to find all conveyances by each grantor during the period of the grantor's ownership of the property and examines each conveyance to determine whether the property conveyed is the property of interest. *See id.* at 590–91; *id.* § 18.1 at 656–57 n.3; James Karp & Elliot Klayman, Real Estate Law 424 (6th ed. 2006) ("Any conveyance in the grantor index during [the period of the grantor's ownership] must be checked to see whether it affects the concerned parcel."); Harry M. Cross, *The Record "Chain of Title" Hypocrisy*, 57 Colum. L. Rev. 787, 788–89 (1957) (description of chain-of-title search); Francis S. Philbrick, *Limits*

-17-

*of Record Search and Therefore of Notice*, 93 U. Pa. L. Rev. 125, 173 (1944) (disagreeing with the implicit view of Tiffany, The Law of Real Property (2d ed. 1920), that every deed from a grantor in the chain of title must be examined "*in extenso*," and instead suggesting that the examination of the deed can be limited to "the description of the land," unless the described land is the property of interest). The conveyances in the chain of title must then be thoroughly examined. "[T]he law assumes that a prudent purchaser would inspect [records in the grantor's chain of title] and treats him on the basis of his having knowledge of their contents." Casner, *supra*, at 589; *see* Cross, *supra*, at 789 (requiring "study of the transactions . . . discovered [through the indices]").[2]

Such a chain-of-title search, however, is an imperfect means of determining all potential claims to a property. The register of deeds may have made an indexing error, yet the erroneously indexed instrument might still be deemed to provide constructive notice. *See Luthi*, 576 P.2d at 1070 ("[I]n situations where an instrument of conveyance containing a sufficient description of the property conveyed is duly recorded but not properly indexed, the fact that it was not properly indexed by the register of deeds will not prevent constructive notice under the provisions of K.S.A. 58-2222."). Also, such a chain-of-title search may totally miss a parallel chain of title to the property (under which someone claims

---

[2]We can ignore for present purposes the complications that arise from transfers of property by will, tax sale, etc.

title through a grantor not in the chain of title to the vendor); and there may be technical problems caused by delayed filings of instruments in the chain of title (as when a deed *to* a grantor is recorded after recording of the deed *from* the grantor), *see* Cross, *supra,* at 793–94. In addition, some authorities have complained of the time and effort required for this type of search, *see* Paul E. Basye, Clearing Land Titles 63–64 (2d ed. 1970), although computerization should ameliorate the difficulty. In any event, other indices, such as the numerical index authorized by Kansas law, provide a useful supplement to catch title defects not found in a chain-of-title search.

The critical question before us is what do the Kansas courts expect a purchaser to know from using the grantor and grantee indices. (Although a purchaser may be expected to know further information from the use of other indices, we need not address that issue to resolve this appeal.) There are two components to this question. First, what is the purchaser deemed to know about the contents of the documents referenced in the index? Second, what is the purchaser's duty to make additional inquiry (from which further knowledge is acquired) based on what is deemed known about the contents?

We begin with the first question: what is the purchaser deemed to know about the contents of documents referenced in the grantor and grantee indices? Because of the Kansas statutory requirement of grantor and grantee indices, it would be natural to conclude that even if Kan. Stat. Ann. § 58-2222 should not be

read literally as providing constructive notice of the contents of every properly filed instrument, there is at least constructive notice of the contents of every instrument in the chain of title. The Kansas Court of Appeals essentially reached this conclusion in *Wichita Great Empire Broadcasting, Inc. v. Gingrich*, 604 P.2d 281 (Kan. Ct. App. 1979). Addressing a claim of professional negligence against an abstracter, the court said that the abstracter must examine the filed instrument rather than rely on the description in an index (in that case, a judgment docket that misdescribed a release as a total release rather than a partial release). *See id.* at 282–83. It cited authority relating to recording of conveyances (as well as judgment liens) and noted that "[i]n other jurisdictions, relying on the index rather than going to the original instrument has been held to be negligence as a matter of law," *id* at 282, and it quoted with approval an encyclopedia stating that "failure to examine the original records is negligence as a matter of law." *Id.* at 283 (internal quotation marks omitted)). The court also indicated approval of a Nebraska opinion stating that an abstracter cannot rely on a numerical index to the exclusion of the grantor and grantee indices. *See id.* (citing *Crook v. Chilvers*, 157 N.W. 617 (Neb. 1916)). In addition, the court affirmed the trial court's exclusion of the abstracter's evidence of common practice in his profession because the evidence was not pertinent, thus making clear that the legal standard

was not to be determined on the basis of what professionals think is appropriate. *Id.* at 283–84.[3]

*Bacon v. Lederbrand*, 160 P. 1029 (Kan. 1916), an opinion overlooked by the courts below and by the parties, confirms the view that purchasers are deemed to know the contents of recorded documents in the chain of title. W. M. Dickson contended that he had acquired title to certain property free of a $1,750 mortgage from M. C. Schaeffer to W. E. Bacon. The mortgage was executed on August 3, 1913, but not recorded until February 9, 1914, after conveyance of the land from Schaeffer to A. R. Rhine, and then from Rhine to Dickson in a deed recorded on January 20, 1914. Because the mortgage was filed after Dickson had acquired title, this filing did not put Dickson on notice of the mortgage and ordinarily Dickson's interest in the property would therefore not be subject to the mortgage. But the court held that his interest was nevertheless subject to the mortgage because the mortgage had been referred to in a document in his chain of title. The deed from Schaeffer to Rhine contained the following language:

> Same to be free and clear of all incumbrance except one first mortgage of twenty-five hundred dollars ($2,500) and interest at the rate of 6% from Mch. 3rd, 1913, and a *second mortgage of seventeen hundred and fifty dollars ($1,750)* due Jan. 1st, 1914 which said second party assumes and agrees to pay.

---

[3]For the same reason, we hold that the expert report and testimony by Kyle Mead were legally irrelevant. Moreover, his report and testimony were so constrained by artificial restrictions that we doubt that they were admissible proof of industry practice in any event, and Mead was hardly qualified to give expert testimony on the reasonableness of a title search by a nonprofessional.

*Id.* at 1030 (emphasis added). The court held that Dickson was on notice of the recital in the deed to Rhine (Dickson's grantor) because the notice provided by the statute is "notice of the contents of all the prior recorded deeds and mortgages." *Id.* (We assume that the word *prior*, rather than referring to every previously filed document, referred only to those documents in the chain of title.) In other words, in answer to the first question regarding notice, a purchaser is deemed to know the contents of every recorded document in the vendor's chain of title. The purchaser therefore must examine the full contents of the documents in the chain of title. No index entry of Schaeffer's deed to Rhine would have disclosed the mortgage referred to in the deed (after all, the document would be indexed as a deed not a mortgage), and its mention of the mortgage would not be found unless one read beyond the description of the property in the deed.

*Bacon* also answers the second question posed above—what is the purchaser's duty to make additional inquiry based on what is deemed known about the contents of recorded documents? *Bacon* said that the purchaser is not only "chargeable with notice of the facts appearing upon the[] face [of the title papers]," but "also with knowledge of all facts suggested therein, and which, with the exercise of reasonable prudence and diligence, he might have ascertained." *Id.* (internal quotation marks omitted). Thus, the court ruled against Dickson because once he saw the mention of the mortgage in the deed to Rhine, "[i]nquiry of his grantor and at least of his grantor's grantor would have revealed this $1,750

unrecorded mortgage." *Id.* We infer from *Bacon* the general rule that if a document in the chain of title suggests a substantial problem, the purchaser must make reasonable inquiry. *Bacon* is still good law. We note that the statute construed in *Bacon* had the same wording as present-day Kan. Stat. Ann. § 58-2222; and no subsequent published Kansas opinion has questioned *Bacon*.

One question that may arise is whether a particular conveyance is in the chain of title. The answer is important because constructive notice is limited to the contents of conveyances in the chain of title. If, for example, the search of the grantor index leads to a deed by the grantor of an entirely different piece of property from the one being purchased, the purchaser is not on constructive notice of the contents of that deed. But the purchaser must examine each conveyance from a grantor (during the period of the grantor's ownership of the property of interest) to determine whether it is in the chain of title. Apparently such an examination is generally required in conducting a title search. *See*, *e.g.*, Karp & Klayman, *supra* at 424 ("Any conveyance in the grantor index during [the period of the grantor's ownership] must be checked to see whether it affects the concerned parcel."); Philbrick, *supra* at 174. And we understand Kansas law to be the same. *Gingrich* held that notations in an index cannot be relied upon and that "the abstractor has a duty to examine the original records." 604 P.2d at 283 (judgment docket misstated that a partial release of a judgment was a full release); *cf. Luthi*, 576 P.2d at 1070 ("[I]n situations where an instrument of

conveyance containing a sufficient description of the property conveyed is duly recorded but not properly indexed, the fact that it was not properly indexed by the register of deeds will not prevent constructive notice under the provisions of K.S.A. 58-2222.").

Moreoever, when examining a conveyance to determine whether it is in the chain of title, the purchaser must exercise proper care. In *Hildebrandt* the hypothetical purchaser was not entitled to stop the examination of the deed as soon as he saw that the property was described as being in a section other than the section of interest; the court found that a purchaser would be on notice of the additional information contained in the metes-and-bounds description, which provided the correct section number. *See Hildebrandt*, 683 P.2d at 1290. As *Miller* stated: "[N]otice is implied when it consists of knowledge of facts so informing that a reasonably cautious person would be prompted to inquire further . . . . If a possible cloud on the seller's title appears, the prospective purchaser must either clear the cloud or proceed at his own risk." 775 P.2d at 204 (internal quotation marks omitted). The knowledge that the purchaser is deemed to possess includes the contents of conveyances that are clearly in the chain of title. The purchaser is "chargeable . . . with knowledge of all facts suggested [by chain-of-title documents], and which, with the exercise of reasonable prudence and diligence, he might have ascertained." *Bacon*, 160 P. at 1030. Consequently, a purchaser must take reasonable and prudent steps to determine whether a

conveyance is in the grantor's chain of title when the full description of the property in the conveyance, together with the contents of the instruments in the chain of title, create a reasonable possibility that it is.

We now turn to the specifics of the case before us to determine the extent of constructive notice to a purchaser of the Debtors' house. Application of the above law will make it clear that such a purchaser was on notice that the Bank had a mortgage on the house, or, at the least, that he needed to make inquiry regarding whether the Bank's mortgage burdened the house.

To begin with, a purchaser would be on notice of the contents of every recorded instrument in the chain of title to the property. These instruments undoubtedly include the following documents that recite the correct lot number:

(1)     The 1999 deed of the house to the Debtors, which recites the correct lot number and recites the house's street address along the document's left margin (and lists the same address a second time as the Sellers' mailing address).

(2)     The Debtors' purchase-money mortgage on their house, which burdens "the following described property located in SHAWNEE County, Kansas: LOT 79, ARROWHEAD HEIGHTS SUBDIVISION NO. 5 IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS, which has the address of 3317 SW MOUNDVIEW DR., TOPEKA, Kansas 66614." Aplt. App. Vol. III at 680–81.

-25-

(3)     The second mortgage, filed in Book 3508, page 711, whose description of the property likewise includes not only Lot 79 in Arrowhead Heights Subdivision No. 5, but also the street address and "TAX ID # 145-150-40-04-003-00-0." *Id.* at 688, 694.

(4)     The release of the purchase-money mortgage, which provides the correct lot number and also gives 3317 SW Moundview Dr. as the Debtors' mailing address.

A prospective purchaser of the Debtors' house, knowing that he is charged with knowledge of the contents of every recorded instrument in the Debtors' chain of title, would examine these four documents and learn that the Debtors' house (1) is at 3317 SW Moundview Dr. and (2) has parcel identification number 145-150-40-04-003-00-0.  His review of the grantor and grantee indices would also disclose the existence of the Bank's mortgage.  He would then review it to see whether it is in the Debtors' chain of title to their house—in other words, whether it is a mortgage on the Debtors' house.  The purchaser's examination would produce conflicting signals.  The mortgage is on Lot 29, whereas the Debtors' house is at Lot 79.  But the mortgage states (1) that it is on property at 3317 SW Moundview Dr.—the address of the Debtors' house; and (2) that it is on property with parcel identification number 145-150-40-04-003-00-0—the number for the Debtors' house.  We cannot imagine a reasonably prudent purchaser who

-26-

would not recognize that a problem exists, make inquiry, and ascertain that the Bank's mortgage has an inadvertent error in the lot number.

Equally compelling is the notice provided by the Subordination Agreement. The purpose of the agreement is to make the second mortgage on the Debtors' house, which was subordinate to the purchase-money mortgage, likewise subordinate to the Bank's mortgage on the refinancing loan to the Debtors. One recital in the agreement accurately references, by book and page numbers in the register's records, the second mortgage itself (which has the correct lot number, as well as the correct street address and parcel identification number) but the recital makes the same error in the lot number as the Bank's mortgage:

> WHEREAS, Jorge Colon ("Borrower"), whether one or more, executed a note in the original principal sum of $30,000.00 dated 5/11/2001, secured by a deed of trust or mortgage of even date therewith in favor of GUARANTY NATIONAL BANK OF TALLAHASSEE covering property located at 3317 Sw Moundview Dr. Topeka, KS 66614, ("Property") recorded on 6/1/2001, as BOOK: 3508, PAGE: 711, in Official Records of said County; and [LOT 29, ARROWHEAD HEIGHTS SUBDIVISION NO. 5, IN THE CITY OF TOPEKA, SHAWNEE COUNTY, KANSAS].[4]

Aplt. App. Vol. III at 696. Two other recitals accurately reference the Bank's mortgage by book and page numbers and state that the loan underlying the mortgage was conditional on the second mortgage being subordinated to the Bank's mortgage:

---

[4] The bracketed text was incorporated into the quoted paragraph through a placeholder asterisk and corresponding footnote.

WHEREAS, Borrower has executed, or is about to execute, a deed of trust or mortgage and note not to exceed the sum of $83,675.00 ("New Loan") in favor of _____ ("New Lender"); and recorded in Book 3807 Page 344; and

WHEREAS, New Lender is willing to make the New Loan provided the deed of trust or mortgage securing same is a lien or charge upon the Property prior and superior to the lien or charge of the deed of trust held by Subordinating Lender, and provided that Subordinating Lender will specifically and unconditionally subordinate its lien to the lien or charge of the deed of trust or mortgage in favor of New Lender;

*Id.* The Subordination Agreement then recites that the holder of the second

mortgage is willing to subordinate that mortgage to the Bank's mortgage and

agrees to do so.[5]

---

[5] The pertinent portion of the agreement provides:

WHEREAS, it is to the mutual benefit of the Borrower, New Lender and Subordinating Lender that New Lender make such New Loan to Borrower; and Subordinating Lender is willing that the deed of trust or mortgage securing same shall, when recorded, constitute a lien or charge upon said land which is unconditionally prior and superior to the lien or charge held by Subordinating Lender;

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to induce New Lender to make the New Loan, it is hereby declared, understood and agreed as follows:

  1. The deed of trust or mortgage securing the New Loan in favor of New Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the Property, prior and superior to Subordinating Lender's lien or charge.
  2. New Lender would not make its New Loan without this Agreement.
  3. This Agreement shall be the whole and only agreement with regard to the subordination of the Subordinating Lender's lien

(continued...)

We can summarize the above as follows: First, although the Subordination Agreement states the incorrect lot number, it undoubtedly is in the Debtors' chain of title because it governs the second mortgage on the Debtors' house, which it references unambiguously by book and page numbers in the county register's records. *Cf. Luthi*, 576 P.2d at 1070 ( "A *description of the property conveyed should be considered sufficient if it identifies the property* or affords the means of identification within the instrument itself or *by specific reference to other instruments recorded in the office of the register of deeds*." (emphasis added)). Second, the mortgage to which the second mortgage is subordinated by the agreement is undoubtedly the Bank's mortgage, again referenced unambiguously by book and page numbers, necessarily implying that the Bank's mortgage and the second mortgage are on the same property—namely, the Debtors' house. (A subordination agreement would be unnecessary if the two mortgages burdened distinct pieces of property.) Again, no reasonably prudent person could fail to see the cloud on the title created by the Bank's mortgage and make further inquiry.

Thus, a purchaser would be on constructive notice that the Bank's mortgage encumbered the Debtors' house. *See United States v. Smith (In re Hagendorfer)*, 803 F.2d 647 (11th Cir. 1986) (proper examination of chain of title would have

[5](...continued)
                    or charge to the New Lender's lien or charge.

Aplt. App. Vol. III at 696–97.

revealed error in mortgage's property description—an incorrect township number—when deed to debtor contained the same error); *Gresham v. Am.'s Servicing Co. (In re Gresham)*, 373 B.R. 914, 921 (Bankr. W.D. Mo. 2007) (bankruptcy trustee had constructive notice of trust deed despite single-character mistake in block number of property description because (1) instrument gave property's correct street address and (2) prior trust deed and subordination agreement gave both the correct street address and correct block number); *see also Reiber v. Option One Mortgage Corp. (In re Hojnoski)*, 335 B.R. 282, 289 (Bankr. W.D.N.Y. 2006) (trustee had constructive notice because a title searcher would "see that there was no predicate document of conveyance . . . indicating that the Debtor had any interest in [the misidentified] real property . . . so that it would be reasonable for that searcher to question whether there was an indexing error."). *But cf. Chase Manhattan Mortgage Corp. v. Bird (In re Hiseman)*, 330 B.R. 251 (Bankr. D. Utah 2005) (no constructive notice when legal description was incorrect even though street address and tax parcel identification number were correct; but opinion makes no mention of whether any conveyance in chain of title describes property by street address or identification number); *Stubbins v. Am. Gen. Fin. Servs., Inc. (In re Easter)*, 367 B.R. 608 (Bankr. S.D. Ohio 2007) (same).

Because the recorded documents in the Debtors' chain of title defeat the trustee's claim that a BFP could avoid the Bank's mortgage, we need not address

the Bank's argument that notice is provided simply by the correct street address and parcel identification number in the mortgage itself.

The Kansas authorities relied upon by the trustee are not to the contrary. Neither of them concerned an instrument with a correct, as well as incorrect, description of the property. In *Luthi* the Kansas Supreme Court dealt with a Mother Hubbard clause, in which there is *no* description of the property. The conveyance at issue in *Luthi* purported to transfer to the appellant, Tours, "all interest of whatsoever nature in . . . Oil and Gas Leases in Coffey County, Kansas, owned by [the grantors] whether or not the same are specifically enumerated above." 576 P.2d at 1067 (internal quotation marks omitted). In another paragraph the instrument described several specific leasehold interests of the grantors in that county. Four years later the grantors conveyed their interest in a lease within Coffey County, known as the Kufahl lease, to the appellee, Burris. *Id.* The Kufahl lease was not among those specifically described in the conveyance to Tours. The question thus was whether Burris had constructive notice of Tours's interest in that lease by dint of the Mother Hubbard clause. Reading the conveyance and recording statutes together, the court ruled that a deed, to provide notice, must "*describe the premises.*" *Id.* at 1070. Because a Mother Hubbard clause does not satisfy that requirement, it does not provide notice under Kan. Stat. Ann. § 58-2222. The court acknowledged the utility of

-31-

Mother Hubbard clauses in emergency situations, such as death-bed transactions, but urged prompt recording of specific descriptions as soon as possible thereafter.

*Hollinger* is closer in point because the mortgage at issue misdescribed the property. It placed the property on Lot 26 of English's addition instead of Lot 26 of English's Fifth addition. Holding that there was not constructive notice of the mortgage, the court quoted a legal encyclopedia as stating that ordinarily "an instrument giving a wrong range or block number . . . would not be in line of title." *Hollinger*, 253 P. at 218 (internal quotation marks omitted). But it also quoted the encyclopedia as saying that "[i]f the record of an instrument containing a defective description of the property is sufficient to put those who see it on an inquiry which, duly prosecuted, would disclose the true facts, the recorded instrument is notice to subsequent purchasers." *Id.* (internal quotation marks omitted). And it said nothing regarding an instrument that contained both correct and incorrect descriptions; nor did it consider the possible connection between descriptions in the instrument at issue and descriptions in instruments clearly in the chain of title, as in this case.

More relevant to the matter before us is the Kansas Court of Appeals decision in *Hildebrandt*. The description in a deed of the land in question first gave the location as Section 24 but later in the metes-and-bounds description correctly gave the section number as 34. *See Hildebrandt*, 683 P.2d at 1290. In

addition, the deed described the tract as Hildebrandt Island. The court held that the recorded deed provided constructive notice.

Although the situation in *Hildebrandt* differs from the one here in that the Bank's mortgage does not contain a correct lot number in addition to the incorrect number, the mortgage does have two correct descriptions of the property—the street address and parcel identification number. Moreover, those two identifiers appear in the property description in instruments that (because they recite the correct lot number) are undoubtedly in the chain of title. Armed with that information, together with the recitals in the Subordination Agreement (which contains unambiguous references to both the second mortgage and the Bank's mortgage by book and page numbers), it would require only common sense to determine that the Bank had a mortgage on the Debtors' house.

In sum, a purchaser of the Debtors' house would be on constructive notice that the Bank's mortgage created a lien on that property or, at the least, a purchaser would be on constructive notice of facts that would require a reasonably prudent person to investigate and then determine that the Bank's mortgage burdened the property. Therefore, the trustee cannot avoid the mortgage under 11 U.S.C. § 544(a)(3).

We also set aside the bankruptcy court's holding that the trustee could avoid the Bank's mortgage under 11 U.S.C. § 544(a)(1), which gives the trustee the same avoidance rights as a judgment-lien creditor. The court rested that

holding on the same reasoning as its decision under § 544(a)(3)—namely, that the lot-number error in the Bank's mortgage precluded constructive notice. Because we have rejected that foundation for the § 544(a)(1) ruling, that ruling can no longer stand. We additionally note, however, that it is questionable whether Kansas law gives judgment creditors the same rights as a BFP. *See Swarts v. Stees*, 2 Kan. 236 (1864) (judgment lien is inferior to recorded mortgage that recites incorrect quarter section); 1 Carroll G. Patton & Joyce D. Palomar, Patton and Palomar on Land Titles § 15 (3d ed. 2002)

## III. CONCLUSION

We REVERSE the decisions of the Bankruptcy Appellate Panel and the bankruptcy court and remand to the bankruptcy court to enter judgment in favor of the Bank on the trustee's action to avoid the mortgage lien and to take any further action necessary to protect the Bank's interest.